DONALD M. MILLER ET AL. *v.* JACK W. APPLEBY

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 12, 1980—decision released January 27, 1981

*Thomas B. Wilson,* with whom, on the brief, was *James F. Brennan, Jr.,* for the appellant (defendant).

*Joseph F. Segal,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J.   The plaintiffs brought this action for damages, claiming that the defendant had fraudulently misrepresented that the property purchased by them had on it a septic system sufficient to accommodate a two-family residence. The court rendered judgment for the plaintiffs and awarded damages in the amount of $15,069. From that judgment, the defendant has appealed and presses three claims of error. He contends that the court erred (1) in concluding that the defendant knowingly made a misrepresentation on which the plaintiffs relied to their detriment; (2) in awarding damages in excess of the cost of installing a new septic system; and (3) in awarding, as consequential damages, the down payment the plaintiffs allegedly lost when a mortgage on the property was foreclosed.

The circumstances underlying the parties' dispute are not seriously contested and are as follows: The plaintiffs, wishing to ease their financial burdens, decided to purchase income-producing property. They contacted a real estate agent, who brought to their attention a two-family dwelling owned by the

defendant. The plaintiffs entered into a contract to buy the duplex house owned by the defendant, and located at 376 Boston Post Road, Waterford.

Before the closing, because of problems the plaintiffs had experienced with a prior home, the plaintiff husband Donald Miller, was concerned about the location and adequacy of the septic system. He inquired of the real estate agent as to the location of the septic system. The real estate agent correctly informed him of the location of the septic tank, but was unable to show him where the leaching field and dry wells were located.

The plaintiffs and the defendant first discussed the septic system at the closing. At that time, the defendant told the plaintiffs that the property had "a large capacity 1200 gallon tank which should be very suitable for a two-family home." The defendant also represented to the plaintiffs that the leaching field was "under the blacktop." The blacktop on the property which the plaintiffs were purchasing was located in an L-shape on the side of and behind the house on that property. At the time of the closing, the defendant owned other property, abutting that sold to the plaintiffs, which had on it a blacktop driveway abutting the driveway on the property sold to the plaintiffs. The plaintiffs therefore believed that the leaching field was located on the property they purchased. Subsequent events disclosed that the leaching field was "under the blacktop" on the abutting property owned by the defendant.

The defendant knew where the entire septic system was located. At the closing, he told the plaintiffs that he had completely redone the septic system approximately six years prior to the closing,

and that he had been the contractor when he remodeled the house and redid the system. The plaintiffs purchased the two-family house. They resided in one half of the house and the other half was rented to tenants.

Subsequent to the purchase, the septic system began backing up, and the living conditions on the premises became intolerable. After receiving two complaints from the plaintiffs' tenants, the sanitarian for the town of Waterford ordered the plaintiffs to repair the septic system. To do this, it would have been necessary to reestablish the leaching area. It was determined, however, that the plaintiffs' property was too small to accommodate a leaching system for a two-family house with five bedrooms. The sanitarian also indicated that the state public health code did not permit the use of adjacent premises for the purpose of leaching from the plaintiffs' property.

As a result of their inability to reestablish the septic system on their property, the plaintiffs were unable to use the premises as a two-family residence. Because of the sewage problems, the tenants vacated the premises. As a two-family residence, the plaintiffs realized a monthly rental of approximately $143 from their tenants. The plaintiffs subsequently lost this property as a result of foreclosure proceedings.

We deal first with the defendant's claim of error regarding the court's conclusion of fraudulent misrepresentation. The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to

induce the other party to act on it; and (4) that the latter did so act on it to his injury. *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69 (1970); *Clark* v. *Haggard,* 141 Conn. 668, 109 A.2d 358 (1954); *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525 (1937); *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321 (1912); *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 A. 980 (1894).

Fraud is not to be presumed but must be proven by clear and satisfactory evidence. See *Bruneau* v. *W. & W. Transportation Co.,* 138 Conn. 179, 182, 82 A.2d 923 (1951); *Kulukundis* v. *Dean Stores Holding Co.,* 132 Conn. 685, 689, 47 A.2d 183 (1946); *Burley* v. *Davis,* 132 Conn. 631, 634, 46 A.2d 417 (1946); *Basak* v. *Damutz,* 105 Conn. 378, 382, 135 A. 453 (1926). "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." *Hathaway* v. *Bornmann,* 137 Conn. 322, 324, 77 A.2d 91 (1950). The trier is the judge of the credibility of the testimony and the weight to be accorded it. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 547, 391 A.2d 170 (1978); see, e.g., *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 555, 364 A.2d 217 (1975); *Yale University* v. *New Haven,* 169 Conn. 454, 463, 363 A.2d 1108 (1975); Maltbie, Conn. App. Proc. § 194.

The trial court found that all of the essential elements of fraud had been proven by the plaintiffs. The decision of the trial court will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Upon review, we hold that

there was ample evidence to support the trial court's conclusion of fraudulent misrepresentation by the defendant.

The defendant's statements with regard to the adequacy and location of the septic system were false representations made as statements of fact. After inquiry by the plaintiff at the closing, the defendant stated that the property had a septic tank which "should be very suitable for a two-family home" and that the leaching field was located "under the blacktop." Since there was a blacktop located on the property which the plaintiffs were purchasing, the plaintiffs could have reasonably believed, and the defendant could have reasonably expected them to believe, that they were purchasing property which had a leaching area on the premises, i.e., an entire septic system on the premises, which was adequate for the purpose of a two-family house.

Evidence at trial indicated that the defendant knew where the entire septic system was located. At the closing, not only did the defendant discuss with the plaintiffs the adequacy of the tank and the location of the leaching field, but he also informed them that six years earlier, he had completely redone the septic system, and that he had been the contractor when he remodeled the house and redid the system. We have had occasion to point out that where a defendant has special means of knowledge, and a plaintiff can under the circumstances attribute to the former accurate knowledge of what is represented, the plaintiff need not show the actual knowledge of the falsity of the representation. See *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 346–47, 232 A.2d 307 (1967); *Warman* v. *Delaney*, 148 Conn. 469, 172 A.2d 188 (1961); see also, 37 Am. Jur. 2d, Fraud and Deceit § 201.

It is also reasonable to conclude that the defendant's misrepresentation of the location of the leaching field was made to induce the plaintiffs to purchase the property.[1] Because of problems which the plaintiffs had experienced with a prior home, they specifically inquired of both the real estate agent and the defendant about the septic system. It was at the closing when the defendant made his false representations. The representations of the defendant at that crucial time were not only material, but also an inducement made by the defendant to the plaintiffs to go through with the purchase.

The plaintiffs clearly relied on the defendant's misrepresentations to their detriment. They bought the property which did not have on it, as represented, a leaching field; the system backed up; the living conditions became intolerable; and the plaintiffs were unable to correct the problem.

We deal next with the defendant's last two claims concerning the proper award of damages. The general rule in Connecticut in awarding damages in cases of this kind is that the plaintiff purchaser is entitled to recover the difference in value between the property actually conveyed and the value of the property as it would have been if there had been no false representation, i.e., "the benefit of the bargain" damages, together with any consequential damages resulting directly from the fraud. See *Franchey* v. *Hannes,* 152 Conn. 372, 381, 207 A.2d 268 (1965); *Clark* v. *Haggard,* supra, 673; *Morrell*

---

[1] We have pointed out that when false representations are made for the purpose of inducing an act to another's injury, necessarily there is the plain implication that the representations were made with the intent to deceive. *Dwyer* v. *Redmond,* 103 Conn. 237, 244, 130 A. 108 (1925); *Kornblau* v. *McDermant,* 90 Conn. 624, 628, 98 A. 587 (1916); *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 A. 974 (1911).

v. *Wiley,* 119 Conn. 578, 583, 178 A. 121 (1935); *Piascyk* v. *Malon,* 116 Conn. 418, 425, 165 A. 352 (1933); see also Dobbs, Remedies § 9.2, p. 595. "The damages to be recovered in an action of this character are such as are the natural and proximate consequence of the fraudulent representation complained of; and those results are proximate which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations." *Kornblau* v. *McDermant,* 90 Conn. 624, 632, 98 A. 587 (1916). In general, with only a few exceptions, the courts have accordingly restricted recovery to those damages which might foreseeably be expected to follow from the character of the representation itself.[2] Prosser, Torts (4th Ed.) § 110, p. 732.

In applying our law of damages to this case, the trial court correctly concluded that the plaintiffs were entitled to recover as an element of their damages $8600 which was the difference in the value of the property at the time of the sale, i.e. $20,000, and what it would have been worth if it had been as represented to be, i.e. $28,600. In addition, the award of $469, which was for monies actually expended by the plaintiffs when they were forced to have the septic system pumped out, was a proper element of damages proximately resulting from the defendant's fraud.

The court, however, should not have included, as an element of its damage award, the sum of $6000 which was the plaintiffs' down payment on the premises which they alleged they lost when the prop-

[2] Prosser states that "It is only where the fact misstated was of a nature calculated to bring about such a result (i.e. the loss claimed as the result of the misrepresentation) that damages for it can be recovered." Prosser, Torts (4th Ed.) § 110, p. 732.

erty was foreclosed. The plaintiffs claimed this as an element of damages, maintaining that the loss of the rental income prevented them from being able to keep up the mortgage payments, and thus caused them to lose the property through foreclosure proceedings. This portion of the award cannot stand. Permitting the sum of $6000 to remain as an element of the award of damages is to allow a double recovery for the loss of the down payment. "Where the general measure [of damages] used is the benefit of the bargain measure . . . care must be exercised to avoid giving the plaintiff an unwarranted bonus." Dobbs, Remedies § 9.2, p. 599. The award of $8600 fully compensates the plaintiffs for the difference in value caused by the defendant's fraud. Upon the facts of this case, the award of $6000 for the loss of the down payment duplicates the loss of value already compensated for by the court.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiffs against the defendant in the amount of $9069.

In this opinion the other judges concurred.