Gardner L. MASON, Caryl Mason,
Curtis M. Hill, Consuelo Hill and
Daniel H. Aldrich

v.

H. Alan BURKETT, personally and offi-
cially, Ronald P. Scott, personally and
officially, IDS Financial Services, Inc.
and American Express.

Civ. No. N–88–547(WWE).

United States District Court,
D. Connecticut.

Jan. 18, 1991.

Francis E. D'Urso, Peter A. Kelly, New
Haven, Conn., for plaintiffs.

Michael Dorney, Robert Ciulla, Jacque-
line Bucar, Tyler Cooper and Alcorn, New
Haven, Conn., for Ronald P. Scott, I.D.S.
Financial Service, Inc., and American Ex-
press.

Joseph Dieso, O'Connell, Flaherty, Att-
more & Forsyth, Hartford, Conn., for H.
Alan Burkett.

RULING ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

EGINTON, District Judge.

In this civil action, defendant Ronald P.
Scott ("Scott") is accused of breach of fidu-
ciary duty (Count Four), aiding and abet-
ting violations of the securities laws (Count

Five), fraud (Count Six), and negligent misrepresentation (Count Seven). Count Eight of the complaint alleges that defendant IDS Financial Services ("IDS") is liable for the actions of defendant Scott because it had control over Scott within the meaning of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) and pursuant to general principles of agency law. Count Nine of the complaint alleges that defendant American Express ("Amex") is also liable for Scott's actions because its subsidiary, IDS, was acting in furtherance of the business of Amex and was under the supervision and control of Amex. Defendants Scott, IDS and Amex have moved for summary judgment, claiming that there are no genuine issues of material fact in dispute.[1] For the reasons set forth below defendants' motion for summary judgment will be granted in part and denied in part.

## FACTS

Defendant IDS is engaged in the business of offering financial management advice and investment opportunities to the general public. IDS is a wholly owned subsidiary of defendant Amex. Defendant Scott was at all relevant times an independent contractor engaged in the business of financial planning on behalf of IDS. On or about January 9, 1984, plaintiff Gardner L. Mason ("Mason") requested a financial planning guide from IDS. As a result of Mason's inquiry, Scott called and scheduled a meeting with Mason, which took place on March 13, 1984. During the meeting, Scott and Mason discussed investment opportunities with IDS. During 1984 Scott and Mason had several discussions and Mason eventually invested in certain IDS offerings. By early 1985 Mason was questioning Scott on the availability of investments which might produce a greater return than that expected from the IDS limited partnerships. Scott arranged to introduce Mason to Burkett, who claimed to deal with investments that produced a 30–40% rate of return. Mason told his friend, plaintiff Curtis Hill ("Hill"), about his upcoming meeting with Burkett and on February 28, 1985,

Scott, Mason and Hill met with Burkett to discuss investment opportunities. Burkett gave Mason and Hill agreement forms for his "investment loan pool" and "commodity loan pool" plans. Scott told Mason that he thought the Burkett investments were too risky. Nevertheless, over the course of the next two years the Masons, the Hills, and plaintiff Daniel Aldrich, a co-worker of Mason's, all invested large sums of money with Burkett.

By spring of 1987 it became apparent that there were problems with the Burkett investments and Burkett ultimately was arrested and convicted on federal and state charges of securities fraud, and sentenced to five years imprisonment by this Court and three years imprisonment on the state charges to run concurrent with the federal sentence. Plaintiffs' combined losses amounted to $220,000.

## DISCUSSION

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In considering the motion, the Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). The mere existence of factual issues, where those issues are not material to the claims before the Court, will not suffice to defeat a motion for summary judgment. *Knight v. U.S. Insurance Company*, 804 F.2d 9 (2d Cir.1986).

### A. *Breach of Fiduciary Responsibility*

The fourth count of plaintiffs' complaint alleges that Scott as a fiduciary breached his common law and statutory duty to act

---

1. The remaining counts of the complaint are directed solely against defendant H. Alan Burkett ("Burkett") who is represented by separate counsel and has not joined in this motion for summary judgment.

with the utmost good faith and to make full disclosure of all material facts. Although the Connecticut Supreme Court has refused to define a fiduciary relationship in precise detail, *Alaimo v. Royer,* 188 Conn. 36, 41, 448 A.2d 207 (1982), it has found that a "fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Dunham v. Dunham,* 204 Conn. 303, 322, 528 A.2d 1123 (1987). A fiduciary relationship will most likely be found where there is a "justifiable trust confided on one side and a resulting superiority and influence on the other." *Alaimo v. Royer,* 188 Conn. at 41, 448 A.2d 207.

With respect to plaintiff Mason, the Court finds that there exists a genuine issue of material fact as to whether or not a fiduciary relationship existed between Mason and defendant Scott. As to plaintiffs Curtis and Consuelo Hill and Daniel Aldrich, it is undisputed that Scott had no professional relationship of any kind with any of them. Indeed, plaintiffs Aldrich and Consuelo Hill never even met or talked to Scott until the depositions were taken in this action. Curtis Hill admits that his only contact with Scott was in February 1985 at the meeting with Burkett, that he did not invest any money with Burkett until almost two years after this meeting took place and that Scott was not his financial planner or broker. Plaintiff Caryl Mason only met Scott after her husband had already invested money with Burkett. Thus, as to these plaintiffs, the Court finds that there are no facts to support a claim of breach of fiduciary responsibility and that defendant Scott is entitled to summary judgment as to the claims of plaintiffs Caryl Mason, Curtis and Consuelo Hill and Daniel Aldrich for breach of fiduciary responsibility.

**B. *Aider and Abettor Liability***

The fifth count of plaintiffs' complaint alleges that Scott acted recklessly in failing to analyze or investigate Burkett and therefore had no basis upon which to advise plaintiffs who claim to have relied on Scott. This count also alleges that Scott processed Mason's withdrawal of funds from Mason's IDS investments so that Mason could invest the proceeds with Burkett. Plaintiffs claim that by virtue of this conduct, Scott aided and abetted a scheme to defraud the plaintiffs in violation of S.E.C. Rule 10b–5.

In order to establish aiding and abetting liability in this circuit, "[p]laintiffs must prove (1) a securities law violation by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983).

There is no dispute as to the first element. Clearly Burkett, the primary wrongdoer, violated the securities laws. As to the second and third elements, plaintiffs have failed to present any facts which demonstrate either knowledge by Scott of Burkett's wrongdoing or substantial assistance by Scott in Burkett's violations of the securities laws.

Absent any evidence of knowledge or substantial assistance on the part of defendant Scott, Scott is entitled to judgment as a matter of law as to plaintiffs' allegations of aider and abettor liability.

**C. *Fraud***

The sixth count of plaintiffs' complaint alleges that Scott intentionally or recklessly misrepresented the quality of Burkett's investment vehicles and thus is liable for fraud.

In Connecticut, "fraud is not to be presumed but must be proven by clear and satisfactory evidence." *Miller v. Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981). "The essential elements of an action in fraud ... are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *J. Frederick Scholes Agency v.*

*Mitchell,* 191 Conn. 353, 358, 464 A.2d 795 (1983).

In the present case, construing the facts in the light most favorable to the plaintiff and drawing all reasonable inferences against defendants, *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d at 57, the Court finds that plaintiffs have failed to establish any of the four essential elements of fraud. Most importantly, plaintiffs have not pointed to a single false statement made by Scott. Such a failure of proof on the part of the plaintiffs requires that defendant Scott's motion for summary judgment be granted as to plaintiffs' claim for fraud.

Plaintiffs argue that they can demonstrate fraud by showing lack of full and fair disclosure. In support of this plaintiffs cite *Gelinas v. Gelinas,* 10 Conn.App. 167, 522 A.2d 295 *cert. denied,* 204 Conn. 802, 525 A.2d 965 (1987). The court in that case, however, also noted that failure to make a full and fair disclosure of facts about which one has a duty to speak must be "accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment." *Id.* at 173, 522 A.2d 295. Once again plaintiffs have failed to offer any facts which demonstrate that Scott, if he had a duty to do so, failed to make a full and fair disclosure about facts known to him and that he intended, by virtue of this non-disclosure, to induce plaintiffs to invest with Burkett. Plaintiffs' argument, unsupported by facts, is therefore insufficient to defeat defendant Scott's motion for summary judgment as to plaintiffs' claim of fraud.

### D. *Negligent Misrepresentation*

The seventh count of plaintiffs' complaint alleges negligent misrepresentation by Scott. In *D'Ulisse–Cupo v. Directors of Notre Dame High School,* 202 Conn. 206, 217, 520 A.2d 217 (1987), the Connecticut Supreme Court found the "governing principle" of the tort of negligent misrepresentation to be as set forth in the *Restatement (Second) of Torts,* Section 552 which provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Plaintiffs have provided no evidence that Scott provided any false information. Indeed, the facts as set forth by plaintiffs demonstrate that Scott provided plaintiffs with no information regarding Burkett's operation and in fact, counselled Mason that he thought that investing with Burkett was too risky. Absent evidence of any misrepresentation, the Court finds that defendant Scott is entitled to judgment as a matter of law on plaintiffs' claim of negligent misrepresentation.

### E. *Liability of IDS*

The eighth count of plaintiffs' complaint alleges that IDS is liable for the actions of defendant Scott because it had control over Scott within the meaning of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) and pursuant to general principles of agency law. Inexplicably, IDS has not moved for summary judgment on this count of the complaint. However, because the Court has found no liability on the part of Scott for the claims asserted by plaintiffs Caryl Mason, Consuelo and Curtis Hill and Daniel Aldrich, *ipso facto,* there can be no liability on the part of IDS for the claims of these plaintiffs. In addition, having found no liability on the part of Scott for plaintiff Gardner L. Mason's claims for fraud, negligent misrepresentation and aider and abettor liability, the Court must as a matter of law dismiss these claims against defendant IDS. Finally, as to the claim of plaintiff Mason for breach of fiduciary duty the Court has found that there exists a genuine issue of material fact as to the existence and breach of that duty by defendant Scott. The evidence regarding IDS' control over defendant Scott is uncontroverted. Therefore, the Court will not dis-

miss plaintiff Gardner Mason's claim against IDS based on Scott's alleged breach of fiduciary duty.

### F. *Liability of Amex*

■ In the ninth count of the complaint, plaintiffs allege that Amex is liable as the owner of IDS for any liability imposed upon IDS.

The fundamental rule is that the separateness of parent and subsidiary will be observed and respected in the absence of such factors as, for example, intermingling of transactions, employees and records, failure to observe corporate formalities, inadequate financing of the subsidiary, holding the two corporations out to the public as non-separate enterprises or direction of the subsidiaries corporate policies in the interest of the parent. *See, e.g.,* H. Henn and J. Alexander, *Law of Corporations* Section 148 at 354–56 (3d Ed.1983). In *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.,* 187 Conn. 544, 447 A.2d 406 (1982), the Connecticut Supreme Court held that the separate existence of a corporation will be disregarded only in exceptional circumstances. In order to demonstrate such exceptional circumstances, plaintiffs must show: 1) Control, in the form of complete domination, of the corporation's finances and business practices by the defendant with respect to the transaction attacked, such that the corporation may be said to have had "no separate mind, will or existence of its own;" 2) use of that control by the defendant to commit fraud or other legal wrong such as breach of duty; and 3) proximate causation of plaintiff's injury or unjust loss by the first two elements. *Zaist v. Olson,* 154 Conn. 563, 575, 227 A.2d 552 (1967); *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. 544, 553, 447 A.2d 406 (1982). Such exceptional circumstances may be found if the plaintiff can demonstrate "such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun". *Zaist v. Olson,* 154 Conn. at 576, 227 A.2d 552. Likewise, the corporate structure may be disregarded where two corporations function essentially as one enterprise because of the existence of common owners, officers, directors or shareholders or because of the failure to observe the corporate formalities between the two entities, or "where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Angelo Tomasso, Inc., supra* at 557–560, 447 A.2d 406. Mere ownership, however, is not sufficient to result in liability. *Id.*

The only doubt plaintiffs cast upon the separateness of IDS and Amex is that for a time the company was known as IDS/American Express, Inc. and that IDS publications normally feature an American Express logo and refer to IDS as an American Express company. The undisputed facts, however, show that at all times, IDS has adhered to the requirements and formalities of its corporate structure. The officers and directors of IDS are separate and distinct from the officers and directors of Amex. The employees of IDS are not the employees of Amex. Amex did not conduct the day to day business of IDS or formulate the day to day policies of IDS employees. Thus, assuming the facts alleged by plaintiff to be true for purposes of this motion, the Court finds that plaintiffs have failed to set forth sufficient facts to require the piercing of the corporate veil. Thus, although the court will not dismiss Mason's claim for breach of fiduciary duty against Scott and IDS, plaintiffs' claim for breach of fiduciary duty against Amex must be dismissed as a matter of law.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to plaintiffs' claims for aiding and abetting securities law violations (Count Five), fraud (Count Six) and negligent misrepresentation (Count Seven) as against defendants Scott and IDS. The motion is also granted as to count nine alleging that Amex is liable for any of the actions of IDS. Finally, defendants' motion is granted as to plaintiffs' claims for breach of fiduciary duty (Count Four) with respect to plaintiffs Consuelo and Curtis

Hill, Caryl Mason and Daniel Aldrich. The motion is denied insofar as it seeks summary judgment on plaintiff Gardner Mason's claim for breach of fiduciary duty against defendants Scott and IDS. The Clerk is directed to dismiss this action as against defendant American Express and to dismiss the claims of plaintiffs Caryl Mason, Curtis and Consuelo Hill and Daniel Aldrich. Plaintiff Gardner L. Mason is directed to file an amended complaint in accordance with this opinion.