[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above named cases are companion matters which the court has consolidated and heard together. This memorandum of decision will apply to both. CT Page 2111
The parties are P. Joseph Marsala (Marsala), Dennis A. Barrille (Barrille), and Paragon Construction Co. (Paragon). Paragon is a construction company formed during April 1985 by Marsala and Barrille for the primary purpose of constructing new homes. Marsala was a carpenter and had experience in remodeling while Barrille was a mason and had experience in constructing new homes. Marsala became the President and Treasurer of the corporation while Barrille became its Vice-President and Secretary.
Barrille testified that through his familiarity with Arnold Peck, a developer, they became aware of several lots on Kohary Drive in New Haven that were for sale. Peck operating as Apple Hill Developers sold Lots numbered 1, 2, 4 and 8 to Paragon in consideration of a purchase money mortgage on each lot of $31,500.00 per lot. In addition, the agreement contained an option for the purchase of six (6) lots across the street from the four lots purchased. Marsala testified that after building houses on the four lots they then planned to exercise the option on the six lots. The option itself however was limited to a specific period of 120 days.
A construction mortgage was obtained from First Federal Savings and Loan of Madison, Conn. on each of the lots. The purchase money mortgages were to be paid from the proceeds of the construction mortgages.
Work commenced on the project in mid July 1985. Both parties worked together on the Kohary Drive project for approximately two weeks when Paragon through the efforts of Barrille obtained a job known as the Agro job. The entire crew of Paragon left Kohary Drive and worked on the Agro job through August and September.
Toward the end of the Agro job the parties obtained another project known as the Aerial Lift job. Also at this time the construction mortgages were in place on the four lots on Kohary Drive and the interest on the notes was running. It was agreed that Marsala along with part of the crew would return to Kohary Drive while Barrille and the remaining members of their construction crew would complete the Agro job and then continue on with the Aerial Lift Job. This latter project was completed about mid January.
The fact that the Aerial Lift job was not being completed promptly caused Marsala to visit the site on several occasions and he found that Barrille was not on the job on a regular basis. The evidence disclosed that for some time in December and early January Barrille was suffering from a substance abuse problem and had entered a treatment center.
It was during this period of time that problems between the CT Page 2112 two parties began to arise. Each of them had been taking a draw of $500.00 per week which was increased to $1500.00 sometime during the Agro job. Each of them purchased a truck at Paragon's expense and were charging Paragon for the alleged use of certain tools. During Barrille's absence the books were turned over to his wife who was in possession of a power of attorney from Barrille. She continued to draw checks to both parties which were also signed by Marsala.
When Marsala returned to Kohary Drive they started framing lots 1 and 4. They also began clearing the six lots across the street and put in a drain. A question arose concerning this work and Marsala claims that Barrille indicated there would be no problem exercising the options and based on this assurance they proceeded to do work on these lots incurring an indebtedness of several thousand dollars for which Paragon was never reimbursed.
After Barrille returned from his rehabilitation a dispute arose over how they were to proceed with the construction. Marsala wanted to do the work with their own labor whereas Barrille wanted to sub out the work to subcontractors.
At this time the parties found they were in a financial bind and needed $40,000.00 in order to continue. Barrille offered Marsala the opportunity to take over the project. Marsala was unable to come up with any further financing and Barrille agreed to advance the funds provided he would supervise the project and Marsala would be off the job.
The parties went to Attorney George Adams to prepare an agreement whereby the project could be completed and any profits divided between the parties. The essence of the agreement (Exhibit L) was that Barrille would lend to the corporation the sum of $40,650, the amount needed to pay the presently outstanding obligations of the corporation excepting the purchase money and construction financing. In consideration therefore the corporation was to execute a mortgage deed and note: Mr. Barrille was to supervise and oversee the completion of the dwellings for which he was to receive no compensation except for hours that he actually performed labor at the rate of $12.50 per hour. The agreement established minimum prices for the four properties and if the parties could not come to agreement as to the individual sales prices then they were bound to accept bona fide offers to purchase in those stated amounts. Mr. Adams was authorized to pay those sums due and owing on the individual dwellings up to the maximum amount set forth in Exhibit L, Schedule A.
Barrille assumed control of the project and moved toward the completion of the four houses. The properties were sold through Apple Hill Developers within the price range set forth in the CT Page 2113 agreement. (Exhibit L). Marsala testified that there were extras on these properties which were not collected. The court notes that even were this to be so he Marsala as an officer of Paragon executed all of the necessary papers to carry out the closings on each of the four properties.
During this period of time the amount of hours which Barrille actually worked on the project was questioned by Marsala and he Marsala refused to sign checks to pay the various suppliers and sub-contractors. Barrille disputes Marsala's contention and maintains that he did in fact work those hours, many of them performed in the early morning hours when he would go to the properties to be sure that there was heat to keep the plumbing from freezing. There was some corroborative testimony that Barrille was on the site working during the time he alleges. Barrille then agreed to work without pay to complete the job, requesting that Marsala sign the necessary checks.
Subsequently both Marsala and Barrille signed the necessary deeds to transfer all four properties on Kohary Drive. There remains as corporate assets some $7,000.00 and liabilities of approximately $12,000.00.
While the plaintiff Marsala has brought this action in various counts he basically alleges fraud and breach of a fiduciary duty on the part of the defendant Barrille.
"The essential elements of an action in fraud . . . ., are (1) That a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other to act on it and; (4) that the latter did so act on it to his injury." Miller v. Appleby,183 Conn. 51, 54-55.
"Fraud is not to be presumed but must be proven by clear and satisfactory evidence." Id. 55.
"It is well established that fraud must be proven by clear, precise and unequivocal evidence." Verrastro v. Middlesex Insurance Co., 207 Conn. 179, 181; Bound Brook Ass'n v. Norwalk,198 Conn. 660, 666, 504 A.2d 1047 cert. denied 479 U.S. 819,107 S.Ct. 81, 98 L.Ed. 36 (1986).
In Dunham v. Dunham, 204 Conn. 303, 322 our Supreme Court stated, "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other".
It is true that once a fiduciary relationship is found to CT Page 2114 exist the burden of proving fair dealing properly shifts to the fiduciary who must then show by clear and convincing evidence that he has not violated that trust. The defendant Barrille's purchase of the lots took place after he and Marsala had actually reached a point in their activities where he and Marsala had disagreed over the management policies of the firm and had reached a point in their activities where they had already entered into an agreement thereby they would complete the construction work remaining to be done and to dispose of those properties.
The opinion for the purchase of the six lots across the street on Kohary Drive was allowed to expire. Marsala testified that he knew what an option was and that the option was for a period of 120 days. Marsala alleges that he had a conversation with Barrille regarding the option and that Barrille told him not to worry. It was after this that the parties began to disagree with each other over the management of Paragon and the completion of the four houses on Kohary Drive. It was also prior to Paragon having financial problems which resulted in Barrille offering Marsala the opportunity to purchase his interest in Paragon for $40,000.00. When Marsala was unable to do so Barrille then loaned Paragon the $40,000.00 necessary for the completion of the four houses. Both parties subsequently entered into an agreement in which Barrille would operate Paragon, complete the four houses and sell them at agreed upon prices. It is obvious that at this time there was no longer an amiable relationship between Barrille and Marsala and that any further venture by the two parties under the name of Paragon was highly unlikely.
It was subsequent to these developments that Barrille purchased the so-called option lots from Apple Hill. This was not, however, the exercise of any option. They were in fact purchased for the additional sum of $3,500.00 per lot for a total of $21,000.00 over the option price.
As for the monies spent on those lots this was at a time when both parties had an amiable relationship. It was a time when both parties were making heavy withdrawals from the assets of Paragon. Initially they were paying themselves $500.00 per week, increasing that figure to $1,500.00 per week and charging the company for the so-called use of tools. In addition they purchased two trucks for themselves charging the cost to Paragon. These excesses by both Barrille and Marsala deprived Paragon of the opportunity to exercise the option to purchase the lots across the street. The court finds that the plaintiff has failed to sustain its burden of proof by clear, precise and unequivocal evidence that the defendant Barrille defrauded Marsala or Paragon or breached any fiduciary relationship.
The allegations of collusion between Barrille and various CT Page 2115 subcontractors the court finds to be unconvincing. As far as any check cashing at his bar, the evidence indicated that Marsala himself had in fact cashed a check at that location in the amount of $1,500.00.
As far as the hours that Barrille alleged he worked in completing the four houses on Kohary Drive, Marsala has not disproved the claim that he did in fact work those hours, and it is noted that subsequent to Marsala's complaint Barrille completed the work without pay. The court enters judgment for the defendant Barrille. The court further finds Paragon Construction originally was the trade name owned by Marsala. The court directs that the name is to be returned to Marsala. After any taxes due the State of Connecticut are paid the remaining funds are to be apportioned among its various creditors.
Judgment may enter accordingly.
THE COURT, CURRAN, JUDGE