[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 20, 1991, the plaintiffs, Dean Harvey and John Uhran, commenced this fraudulent inducement and CUTPA action by serving the defendants, John Way and Private Eye vision Center of CT Page 13297 Danbury, P.C. (Private Eye). The case was tried to the court on March 2, 1995. Subsequently, post trial briefs were filed and later the court heard oral argument.
At trial the following evidence was adduced. On June 29, 1990, the plaintiffs and Private Eye entered into a contract for the sale of an optometrical business in Danbury.[1] Unbeknownst to both the plaintiffs and Way, the corporate existence of Private Eye had lapsed on March 30, 1990 due to its failure to file certain forms with the state. [Transcript (Tr.) at 13-14]. Way had no idea that Private Eye had been dissolved by statute since his attorney had never notified him. [Tr. at 13-14]. Subsequent to the sale of the business Way learned that Private Eye had been dissolved. [Tr. at 22]. Thereafter, Way never acted to reinstate the corporation since all of its assets had been sold. [Tr. at 23].
The agreement of sale between the plaintiffs and Private Eye provided for the transfer to the plaintiffs of all the assets owned by Private Eye. [Plaintiffs' Exhibit A]. The sale was in I accordance with the Private Eye corporate resolution allowing for the sale of "all or substantially all of the assets of the corporation on the terms and conditions set forth in the proposed Contract of Sale." [Plaintiff's Exhibit B].
The one asset that the parties specifically excluded from the sale was "the name `Private Eye Vision Center, P.C.'" [Plaintiff's Exhibit A, p. 1]. The reason for this exclusion, as articulated by Private Eye, through Way, was that the plaintiffs were "prohibited by law from using the corporate name of Private Eye Vision Center of Danbury, P.C., since that name is already being used and is not available from the Secretary of State of the State of Connecticut." [Plaintiffs' Exhibit C]. Private Eye, however, assented to the plaintiffs' "use [of] any fictitious trade name or corporate name in connection with the" operation of the business. [Plaintiffs' Exhibit C].
One of the terms of the sale, contained in paragraph six of Plaintiffs' Exhibit A, was that Private Eye "warrants and represents that: . . . (e) [Private Eye] is not a party to any pending or threatened litigation, nor, to the knowledge of [Private Eye], is there any pending or threatened governmental investigation involving [Private Eye] or any of the Assets of the Business, including inquiries, citations, or complaints by any federal, state or local administration or agency, and there are CT Page 13298 not outstanding orders, decrees or stipulations affecting [Private Eye] or any of the Assets or the Business." This document was drafted by Private Eye's attorney [Tr. at 29].
Despite the foregoing warranty, however, Private Eye was involved in a lawsuit with Private Eyes Sunglasses Corporation (Sunglasses) over the alleged infringement of a service or trademark. On April 11, 1986, a letter was sent by Sunglasses' counsel to Private Eye threatening suit if the company did not change its name. [Plaintiffs' Exhibit D]. On February 6, 1989, Sunglasses commenced a federal trademark infringement suit against Private Eye in the District of Connecticut. [Plaintiffs' Exhibit E]. Way was not a party to the suit. [Plaintiffs' Exhibit E].
Way testified that the reason he did not disclose the existence of the suit to the plaintiffs was that he felt, based on his attorney's advice, that it was unnecessary to do so since, in the agreement, the name Private Eye Vision Center of Danbury, P.C. was explicitly excluded from the transaction. [Plaintiffs' Exhibit A, p. 1; Tr. at 26-27]. An alternative explanation given by Way for the nondisclosure was that he felt Private Eye would win the suit. [Tr. at 34]. Private Eye eventually won the suit years later. [Tr. at 44-45].
In connection with the sale, Private Eye also sold to the plaintiffs a sign, attached to the office, that advertised "Private Eye Vision Center". Prior to the sale, Way also engaged in discussions with the plaintiffs concerning the name they would attach to the business. Harvey discussed with Way the pluralization of "Private Eye" [Tr. at 56, 78]. Uhran testified that he had discussed the name situation with Way and way had indicated that all of the names, including "Private Eyes", suggested by Uhran, would be appropriate. [Tr. at 77]. way explicitly stated to Uhran that the only name that could not be used was Private Eye Vision Center with P.C. attached to it since the name was already on file with the Secretary of State. [Tr. at 79]. Way even suggested to Uhran that the plaintiffs should continue with the name on the sign. [Tr. at 79, 123-24]. All of these statements were made by Way, as president of Private Eye, when he knew that the trademark infringement litigation with respect to the name was pending. Way never stated that "[t]here's a problem with this name. You might get sued." [Tr. at 80]. In purchasing the business, the plaintiffs relied on all of Way's representations regarding the name of the business and the fact CT Page 13299 that Private Eye was not involved in litigation. [Tr. at 99, 124].
After the purchase of the business, the plaintiffs changed the name of the business to Private Eyes Vision Care. [Plaintiff's Exhibits L H]. The plaintiffs filed a trade name registration in the Danbury City Clerk's office to this effect. [Tr. at 107]. On October 23, 1990, the plaintiffs received the same letter from Sunglasses that Private Eye had. [Plaintiffs' Exhibit F]. As a result of the litigation threat, the plaintiffs changed the name of the business to EyeCare Plus. [Plaintiffs' Exhibit J, Tr. at 90]. In connection with that change, the plaintiffs had to make several monetary outlays, including changing their stationary, changing their signage and advertising. [Tr. at 81, Plaintiffs' Exhibits H-L].
Some of the expenses were associated with the Newtown store that the plaintiffs had opened under the same disputed offensive name in October 1990. [Tr. at 120-21]. Many of the expenditures, however, were incurred for orders placed prior to the receipt of the litigation letter from Sunglasses. [Tr. at 124]. The expenditures related to the name change are as follows: $1831.36 for stationary in Danbury [Plaintiffs' Exhibit H]; $998.92 for stationary in Newtown [Plaintiffs' Exhibit I]; $4123. for signage [Plaintiffs' Exhibit J]; $5604.14 for advertising in Newtown [Plaintiffs' Exhibit K]; $7856.50 for advertising in Danbury [Plaintiffs' Exhibit L].
The parties agreement also provides that "[i]n the event that [Private Eye] is in default by reason of failure or refusal to comply with any terms hereof, the [plaintiffs] may pursue any remedy available to him in law or in equity and further recover damages due him as a result of [Private Eye's] default hereunder. The parties further agree that the party who is in default shall pay all costs and expenses incurred by the other party as a result of such other party's enforcement hereof, including reasonable attorneys' fees." [Plaintiffs' Exhibit A, p. 7]. The plaintiffs submitted an affidavit that indicates that their fees for prosecuting this matter amount to $4106.40 for the pretrial expenses [Plaintiffs' Exhibit G] and an additional $1700. for trial and post trial appearances [Gerald Gaynor Bill (submitted at oral argument on post trial briefs)]. In their complaint, however, the plaintiffs only request attorney's fees "pursuant to statute." There is no claim in the complaint for breach of contract or for a recovery of fees under the contract. In fact, CT Page 13300 none of the briefs filed by the plaintiffs even recites that such an attorney's fee recovery under the contract is sought.
There was also an allocation in the agreement of sale assigning good will a value of $15,000. [Plaintiffs' Exhibit A, p. 2]. The plaintiffs claim that as a result of the name change they are entitled to a refund of the monies allotted for good will.
In their post trial memorandum the plaintiffs claim that they are entitled to damages under a fraudulent inducement theory and under CUTPA, General Statutes § 42-110b, et seq.
"Whether a plaintiff sustains [its] burden of proof is a question of fact for the trier. Capmar Construction, Inc. v.Coyle, 4 Conn. App. 579, 580, 495 A.2d 1115 (1985)." Dorsey v.Mancuso, 23 Conn. App. 629, 632-33, 583 A.2d 646 (1990). To prevail in a fraudulent inducement case, the plaintiffs must establish (1) a false representation was made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to its detriment. Id., 633, citing Kavarco v. T.J.E., Inc.,2 Conn. App. 294, 295-96, 478 A.2d 257 (1984). Fraudulent inducement must be proven by "clear and satisfactory; " Miller v.Appleby, 183 Conn. 51, 55, 438 A.2d 811 (1981); or "clear, precise and unequivocal evidence" Kilduff v. Adams, Inc.,219 Conn. 314, 328, 593 A.2d 478 (1991).[2]
Here, clear, satisfactory and precise evidence indicates that Way misrepresented the fact that Private Eye was uninvolved in litigation. He admits that at the time of the transaction he knew that Private Eyes was involved in litigation and intentionally withheld the information from the plaintiffs. These facts were unequivocally testified to by way himself. Therefore, the first two elements of fraud are satisfied by clear and precise evidence.
From the circumstances of the case it is also clear that Way made the statement to induce the plaintiffs to act, thereby satisfying the third element of fraud. Way reviewed the pendency of the litigation with his attorney prior to entering into the transaction with the plaintiffs and determined that it was unnecessary to reveal the suit information since he was not selling the name as part of the transaction. This overlooks the CT Page 13301 fact, however, that there is testimony in the record that the plaintiffs discussed the name issue with Way, including the use of the name "Private Eyes" and Way indicated that there would be no difficulty with any name, including "Private Eyes", despite the fact that Way knew that Sunglasses would litigate if any competing business chose to use that name. The fact that Way used the warranty that no litigation was pending to induce the plaintiffs to purchase the business is buttressed by the contents of Plaintiffs' Exhibit C wherein Way recites that any name other than "Private Eye Care P.C." could be used by the plaintiffs. It is in this fashion that the representation is material to the case since way assured the plaintiffs that they could continue operating just as he had in the past. Further, he allowed them to keep the sign as part of the transaction. All of the foregoing occurred when Way knew that a suit by Sunglasses against the plaintiffs would be likely to result. More importantly, Way had a profit motive in attempting to induce the plaintiffs to enter into the deal. He stood to make $120,000. from the transaction. Based on the foregoing, it is clear that Way had an obligation to tell the plaintiffs that he was involved in litigation over the name of the business and misrepresented to the plaintiffs that he was not involved in said litigation in order to induce them to purchase the business.
It is again clear from the testimony that the plaintiffs relied on the representations of Way in entering into the transaction. Furthermore, it is irrefutable that the plaintiffs suffered pecuniary losses as a result of Way's fraudulent conduct. The next issue, then, is which defendants can be held liable for the fraudulent misrepresentation.
"It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable." Kilduff v. Adams,Inc., supra, 219 Conn. 331-32. Moreover, "it [is] unnecessary to pierce the corporate veil in order to find that [Way is] personally liable for [his] misrepresentations. Id., 331. With Way's direct, individual liability for fraudulent inducement established, the court should next address the issue of damages.
"A plaintiff in a fraud action is entitled to recover `any consequential damages resulting directly from the fraud.'Crowther v. Guidone, 183 Conn. 464, 469, 441 A.2d 11 (1981);Miller v. Appleby, supra, 183 Conn. 57. `"The damages to be recovered in an action of this character are such as are the CT Page 13302 natural and proximate consequence of the fraudulent representation complained of; and those results are proximate which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations." Kornblau v. McDermant, 90 Conn. 624, 632,98 A. 587 (1916).' Miller v. Appleby, supra, 183 Conn. 58." Kilduff v.Adams, supra, 219 Conn. 323-24.
Based on the evidence adduced at trial and the prayer for relief contained in the complaint, the court finds that the plaintiffs suffered the following damages as a direct and probable result of Way's fraudulent misrepresentation. The evidence provided by the plaintiffs during the trial indicated that they made the following expenditures as a result of their need to change the name of the business to avoid litigation with Sunglasses. The plaintiffs expended $1831.36 for stationary in Danbury [Plaintiffs' Exhibit H]; $998.92 for stationary in Newtown [Plaintiffs' Exhibit I]; $4123. for signage [Plaintiffs' Exhibit J]; $5604.14 for advertising in Newtown [Plaintiffs' Exhibit K]; $7856.50 for advertising in Danbury [Plaintiffs' Exhibit L]. The Newtown and Danbury expenses are both a proximate result of the misrepresentation since both locations were being run under the same name in reliance on the statements made by Way that there was no litigation pending concerning the business. Therefore, the aforementioned items are recoverable by the plaintiffs as damages.
With respect to the good will the plaintiffs argue that the name change caused the good will of the business to become worthless. The court disagrees with this assertion because there are several components to good will in addition to the name of the business. See 38 Am.Jur.2d Good Will § 4, p. 914 (1968) (elements include, but are not limited to, continuity of place, name, organization and time). The court assigns $1000. in damages for the depreciation in value of the good will as it relates to the name of the business.
The plaintiffs also contend that they are entitled to attorney's fees and punitive damages "pursuant to statute." Their statutory CUTPA claims, however, fail as a matter of law based on insufficient pleading. See Footnote 2. As a result, they are not entitled to attorney's fees or punitive damages under CUTPA. The question is, then, whether the plaintiffs are entitled to attorney's fees and punitive damages under the common law. Since the plaintiffs did not plead either of these avenues of recovery CT Page 13303 in their complaint or prayer for relief, they are not entitled to recover on them.[3] "It is an established legal principle that a plaintiff's right to recovery is limited to the allegations of his complaint. Facts proved but not averred cannot be made the basis of a recovery. Nash Engineering Co. v. Norwalk, 137 Conn. 235,239, 75 A.2d 496 (1950). There were no allegations in the first count [or in the prayer for relief] regarding [contractual] attorney's fees. No judgment could be rendered, therefore, awarding counsel fees, even though the trial court admitted evidence on the subject, since the matter was wholly outside the issues raised by the pertinent pleadings. Kane v. Kane, 120 Conn. 184,189, 180 A. 308 (1935)." Santini v. Kocher,38 Conn. Sup. 506, 508, 452 A.2d 318 (App. Sess. 1982).
Because the plaintiffs have not pleaded punitive damages under the common law and the plaintiff's CUTPA claim has failed, the court finds that the plaintiffs are not entitled to punitive damages. See Kawasaki Kisen Kaisha, Ltd. v. Indomar, Ltd.,173 Conn. 269, 272, 377 A.2d 316 (1977) (the judgment rendered by the court must "conform to the pleadings, the issues and the prayers for relief").
Accordingly, judgment shall enter in favor of the plaintiffs and against the defendants, including Way, individually, for $21,413.92.
Morton I. Riefberg Judge of the Superior Court