[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in four counts brought by the plaintiffs who are optionees under a certain Option Agreement for the purchase of a 9.8 acre parcel of real estate located on West Street in the Town of Southington, County of Hartford and State of Connecticut. The defendant is the optionor under said agreement.
The first count alleges a breach of contract of the agreement to sell the property. The second count alleges a breach of the covenant of good faith and fair dealing. In the third count plaintiffs allege fraud and in the fourth count a violation of the Connecticut Unfair Trade Practices Act.
The plaintiffs claim money damages, an order under CUTPA to pay civil penalties, punitive damages, reasonable attorney's fees and costs of suit and specific performance pursuant to the Option Agreement. The demand for specific performance, however, was vacated before trial.
The defendant has filed an Answer and Special Defenses. In his Answer, he denies all pertinent allegations of the complaint. Although the defendant filed three special defenses at the time of filing the answer, he later revised these special defenses at the request of plaintiffs. In the first revised special defense, the defendant alleges that the plaintiffs are barred by laches from asserting their rights under the Option Agreement in that the plaintiffs did not exercise their option according to its terms. In the second revised special defense, the defendant claims that the plaintiffs have waived any rights they may have under the Option Agreement because they did not exercise the option according to its terms. In the third revised special defense, the defendant claims that the plaintiffs are estopped from asserting their rights under the Option Agreement for the same reasons cited in the first and second special defenses.
The defendant, Thomas P. Reynolds, listed the property in question with the John F. Wortcheck Agency, Inc. of Bristol, CT Page 5118-IIII Connecticut, for sale on June 6, 1988 at a sales price of $490,000 and a commission of 10%. In September of 1988 the parties began negotiations for sale and on March 31, 1989 the defendant and the plaintiffs entered into an "Agreement to Sell and Purchase Real Estate" (Agreement). This agreement to sell contained twelve pages and included some twenty-six separately numbered paragraphs. The date and place of closing was to be on or before April 30, 1989 and the purchase price was to be $440,000. At the time of the signing of the contract, the plaintiffs paid the defendant a deposit of $4,400 which, according to paragraph 6, was to become the property of the seller upon receipt and be non-refundable. Among other things, the agreement provided that there was to be no broker and the seller was to convey or cause to be conveyed marketable title by warranty deed. Paragraph eleven provides for the warranty deed as mentioned above and then contains a second paragraph which states:
 "At least fifteen (15) days before the day of the closing, buyers must notify seller in writing of the existence of any encumbrances or defects in the title which are not excepted in this agreement and which render the title unmarketable. Seller will have thirty days from the date of notification or from the date of closing, whichever is longer, to remove the specified encumbrances or defects. If the seller cannot convey good and marketable title, free and clear of encumbrances or defects, on the date required, buyers may elect to accept whatever title seller can convey for the full purchase price, or may cancel this agreement, in which event all sums paid by buyers under this agreement shall be promptly returned to buyer and this agreement shall terminate."
The parties also agreed not to record the agreement or any memorandum regarding the agreement in the land records. In paragraph 21, labeled "Default" subsection (a) reads as follows:
 "If buyers fail to make any payments required pursuant to this agreement, and if seller is not in default or if seller fails to convey title in accordance with the terms of this agreement and buyers are not in default, the party not in default in either case may, at the party's option, seek any remedies which may be available to CT Page 5118-JJJJ seller or buyer at law or in equity including, without limitation, seeking actual damages (so long as those damages in either case do not include lost profits(,) injunctive or other relief, or require specific performance of the terms of this agreement, without prejudice to any other remedies available to seller or buyers in law or in equity. In the case of a breach of this agreement by buyers, buyers shall forfeit all claims to the premises and all other rights and liabilities of the parties under this agreement shall end. The party prevailing in any such action shall be entitled to receive from the party in default the reasonable cost of the prevailing party in pursuing that action including without limitation reasonable attorney's fees."
Subsection (b) provides:
 "If seller is unable to convey title in accordance with the terms of this agreement, and if the buyers are not in default, the sole liability of seller will be to refund the deposit to buyers and after that refund all other rights and labilities of the parties under this agreement shall end. The seller shall not be required to bring any action or proceeding or otherwise to incur any expense to render the title to the premises marketable."
On April 1, 1989, the plaintiffs entered into an Option Agreement with Thomas P. Reynolds of the Town of Bethel. The defendant is described as the optionor and Arthur V. Snow and John F. Wortcheck are described as the optionees. Under the terms of this option agreement, the optionees were to pay $2,200 with the exclusive option to purchase the premises in question. The "Agreement" is incorporated into this option agreement. The option was to expire on April 30, 1989 but provided for five additional 30 day periods, upon tendering to the optionor an additional $2,200 for each 30 day period. Paragraph 4 of the option provides:
 "This option is to be exercised by the Optionees by written notice signed by the Optionees and sent by registered mail prior to the expiration date, to the Optionor."
Paragraph 6 of the option provides: CT Page 5118-KKKK
 "If the optionees do not exercise the option as herein provided, the optionees covenant and agree with the optionor to forfeit and make no claim against the optionor for any sums paid to the optionor hereunder. If the option is exercised within the specified time, the consideration already paid was not to be applied to the purchase price."
The optionees did pay the defendant $2,200 and $2,200 for each 30 day extension for a total of $13,200. With the original deposit included, the plaintiffs paid the defendant a total of $17,600. This option was nonassignable and among other conditions, there was to be no broker recognized and the option was not to be recorded in any local, state or federal index, including the Southington Land Records. The option period was extended for the full five extension periods to September 30, 1989.
The plaintiffs in this case are both experienced real estate brokers. An agent of the Wortchek Agency first approached the defendant in June of 1988 for the listing as referred to above.
The defendant was an analytical chemist throughout most of his career and some time in 1989 became a licensed real estate agent having passed various courses.
The property here in question was purchased by the defendant's grandfather, Hugh Reynolds in 1915. Hugh Reynolds died in 1918 leaving the property to his wife and children. The order of distribution was never recorded in the Southington Land Records but is on file in the Probate Court for the District of Berlin. Hugh Reynolds had six children, each of whom inherited a one-ninth interest. Hugh's wife, Theresa, inherited a one-third interest. Upon her death in 1919, the interest of Theresa passed, in equal shares, to her six children. No distribution was recorded. Each of the six children subsequently died owning an interest in the property. Mary Reynolds died in 1928; her one-sixth interest passed to her siblings in equal shares. Again, the distribution was not recorded on the land records. Thomas B. Reynolds, father of the defendant, died in New Jersey in 1942 leaving a widow, Ethel. Ethel died in 1985. No record of the transfer of Thomas' one-fifth interest is recorded. James Reynolds died in 1961, leaving his one-fifth interest to his widow, Sophie. CT Page 5118-LLLL The distribution was not recorded; in fact, the property was not even included in the inventory of the estate. Sophie died in 1981, leaving her one-fifth interest to two nieces and a nephew. Richard Reynolds died in 1965. The property was not inventoried in the estate; however, the estate was distributed to his sister Marguerite Reynolds and to the defendant. The distribution was not recorded. Marguerite Reynolds died in 1971, leaving a three-tenths interest to the defendant. The certificate of distribution was recorded. The other remaining child of Hugh Reynolds was Hubert Reynolds; it is not known if he is still alive or what became of his one-fifth interest in the property.
The respective interests in the property can be summarized as follows:
Thomas B. Reynolds or his heirs, representatives and creditors: 1/5
Hubert C. Reynolds or his heirs, representatives and creditors: 1/5
Patricia H. Miner, et al, (nieces and nephew of Sophie Reynolds: 1/5
Thomas Reynolds, (the defendant): 2/5
In anticipation of the purchase of this land, the plaintiffs commissioned a boundary survey, a grading and erosion control plan, and a location of wetlands on the parcel paying for that work $4,314.00 to the firm of Kratzert, Jones Engineers.
At the time of the death of Marguerite Reynolds, the Town of Southington commenced a foreclosure of its tax lien on the property. The defendant and Sophie Reynolds, widow of his uncle James Reynolds, entered into an agreement whereby the defendant understood that if he paid the taxes on the property and took responsibility for the property he would acquire title to same. He did pay $937 clearing up the taxes. The foreclosure action, however, was withdrawn and Reynolds, the defendant, never actually redeemed or purchased the property. On May 7, 1973, the Probate Court executed a Certificate of Distribution purporting to distribute the entire property to the defendant. Later it came to the defendant's attention CT Page 5118-MMMM that there was some question regarding his ownership of the property. He retained an attorney in Southington who searched the title, contacted the tax assessor and, as a result of this action, the tax assessor changed the field card for the property to show the defendant as the owner. This action took place in 1987. The defendant also had an A2 survey performed which survey was in his name and which he later gave to the plaintiffs.
It is clear that at the time he entered into the Option and the integrated Sales Agreement and throughout the period of the Option and its extensions, the defendant did not have clear title to the property.
It is the opinion of this court that the plaintiffs have failed to substantiate the first count of their complaint. In paragraph 4 thereof, they allege that they have requested the defendant to convey the premises "in accordance with the terms of the agreement." (Option Agreement). While they invoke the option as the basis for bringing this action, thereafter they simply ignore the terms of said option agreement.
Paragraph 4 of the option as quoted above states clearly that this option is to be exercised by the optionees by written notice signed by the optionees and sent by registered mail prior to the expiration date, to the optionor. While they attempt to justify their action by calling attention to the fact that the defendant could not deliver clear title, there is no evidence despite the gratuitous statement by counsel in their brief as to when the plaintiffs discovered the defendant could not deliver clear title and when they conveyed this information to him. They have completely overlooked the fact that had they exercised the option in accordance with the terms thereof, the purchase agreement would have come into play and under the terms of same the defendant was to be given an opportunity under the second paragraph of numbered paragraph 11 to remove the specified encumbrances or defects. The plaintiffs never introduced any documents or evidence that the option was exercised and, as Mr. Snow conceded in his testimony, the option was never exercised. The option is a continuing offer to sell, irrevocable until the expiration of the time fixed by agreement of the parties, which creates in the optionee the power to form a binding contract by accepting the offer. In order to effectively form a binding contract, the exercise of CT Page 5118-NNNN the option must be unequivocable, unconditional and in exact accord with the terms of the option. Any doubt is strictly resolved against the optionee. Smith v. Hevrow Realty Corp.,
199, Conn. 330, 336-339.
Plaintiffs rely heavily on Singer v. Wong, 35 Conn. Sup. 640,644 (1978) and related cases for the proposition that a purchaser may rescind an option agreement and recover his option money even without exercising his option. In that case, however, the option vendor expressed his refusal to convey marketable title in accordance with the option prior to the expiration of the option. In this case there is no evidence that the plaintiffs ever sought rescission on the contract nor plead same. On the contrary, the plaintiffs have plead that they "had requested the defendant to convey the premises in accordance with the terms and agreement . . ." For reasons best known to themselves, the plaintiffs, two experienced real estate men simply allowed the option to lapse and would now have the court overlook the clear language of the option agreement wherein section 6 states: "If the optionees do not exercise this option as herein provided, the optionees covenant and agree with the optionor to forfeit and make no claim against the optionor for any sums paid to the optionor hereunder." In so doing, they would have the court deny the defendant the opportunity provided him under the agreement of sale to clear title, if he can, and increase his liability, if he cannot, from a refund of the deposit to refund of the option payments plus interest thereon, etc.
Count two, alleging a violation of the covenant of good faith and fair dealing; count three alleging fraud and count four alleging a violation of CUTPA, are all based upon the plaintiffs' allegations that the defendant knew or should have known that he could not have conveyed good title to the property.
In the opinion of this court, the plaintiffs have failed to prove these allegations of the three counts. The plaintiffs have presented no evidence, let alone clear and convincing evidence as required by the third and fourth counts of the complaint, that defendant knew or should have known that he could not convey good title. On the contrary in addition to his testimony there is evidence that as a layman with the taxes on the property about to be foreclosed, he entered into an agreement with his aunt that if he paid the CT Page 5118-OOOO taxes he would have title to the property, mistaken though that may have been as a matter of law. There is evidence that the Probate Court issued a certificate naming the defendant as the owner of the property and there is evidence that he believed that a title search had been made by the attorney in 1987 and that the title had been cleared when the assessor's card showed him as the owner. It was also admitted by the two plaintiffs that as professional real estate men most real estate people would go first to the assessor's card to determine who had title to the property prior to an actual title search, the burden of a title search being on the plaintiffs.
With respect to the second count, it is the opinion of this court that the defendant acted in good faith when he entered into the Option and integrated Agreement for Sale. In addition, the implied covenant of good faith and fair dealing is essentially a rule of construction "and cannot be applied to achieve a result contrary to the clearly expressed terms of the contract . . ." Eis v. Meyer, 213 Conn. 29, 37 (1989). The clearly expressed terms of these agreements indicate that the parties contemplated the issues of marketable title and the potential inability of the defendant to clear title. Section 21(b) of the contract provides for a specific resolution in cases where the defendant is unable to convey title in accordance with the agreement.
As to count three, the essential elements of an action in fraud are (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it and (4) that the other party acted on it to its injury. Miller v. Appleby, 183 Conn. 51,54 (1981). Fraud is not to be presumed but must be proved by clear and satisfactory evidence. Miller, supra. at 55.
In the opinion of this court, although any representation that the defendant could convey good and marketable title was untrue, it was not known to the defendant to be untrue. Although an agreement to pass good title would generally be considered a representation that the person agreeing to same has good title, it should be noted that in paragraph 11 of the very conservative Agreement the defendant agrees to convey "or cause to be conveyed" marketable title.
With reference to the CUTPA claim in the fourth count, CT Page 5118-PPPP the plaintiffs have based their claim of an unfair trade practice basically upon the fact that the defendant is a licensed real estate broker and that he should have disclosed any defects in title. As indicated above, there is no evidence to establish that the defendant knew of the defect in title or had a source of knowledge superior of that to the plaintiffs. The defendant believed that the question of title had been resolved when the assessor amended his field card and there is nothing suspect or improper about this reliance. It is exactly what the plaintiffs would have done under similar circumstances.
To sum up, it is the opinion of this court that the plaintiffs have failed to prove the allegations of each of the four counts of their complaint.
Accordingly, judgment may enter for the defendant as to each count.
Hale, J., Judge/Referee