[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action seeking money damages arises out of the sale of certain real estate in Bethany by the defendants Thomas J. Dowling and Florine Dowling to the plaintiffs Michele Armellino and Carmina Armellino on May 28, 1986.
The amended complaint is in one count.[1] The first count contains only two allegations that are admitted and they are that on May 28, 1986, the plaintiffs purchased certain real property known as 708-710 Amity Road in Bethany from the defendants for $295,000.00 and that prior to that date the defendant Thomas J. Dowling, advised the plaintiff that there were two fairly new, underground gasoline tanks on said property. The remaining nine paragraphs contain allegations which are all either denied or to which the defendants plead insufficient knowledge or information upon which to form a belief and therefore have the plaintiffs to their proof.
The remaining nine paragraphs of the first count allege the following: Approximately two months after purchasing the property the plaintiffs received a notice from the State of Connecticut DEP ("DEP") concerning the abandonment and removal of underground storage tanks. Upon receipt of that notice the plaintiff Michele Armellino asked the defendant Thomas Dowling why such a notice CT Page 5548 was being issued and at that time Thomas Dowling advised Michele Armellino, that in addition to the two fairly new tanks there were two abandoned gasoline tanks that were pumped dry and properly abandoned and that proper notice was given to the DEP concerning them. As a result of this alleged representation, the plaintiffs did nothing further concerning the DEP notice but thereafter, during the latter part of May 1991 the plaintiffs received another notice from the DEP concerning the abandonment or removal of underground storage tanks. We point out here that May 1991 is crucial in the plaintiffs' claims as they claim in their brief that because of the defendants' nondisclosure the statute of limitations did not begin to run until their discovery at that time of the facts necessary to establish their cause of action "which did not occur until some time after May of 1991." In this regard, they go on to contend that "This suit was commenced in March of 1992, well within the applicable statutes of limitations which began to run upon the plaintiff's [sic] discovery of the improper abandonment of the two tanks and the existence of the third tank."
As a result of this May 1991 notice the plaintiffs allege that they contacted AGAC Environmental, Inc. ("AGAC") for its advice concerning the two abandoned gasoline tanks. AGAC inspected the property and found that that in addition to the abandoned gasoline tanks, there was also an abandoned fuel oil tank located under a building on the plaintiffs' premises. The plaintiffs were also allegedly advised that one of the gasoline tanks had not been pumped dry, that the two underground gasoline storage tanks should be removed and that the tank located under the building should be properly abandoned by filling it with sand. As a result of this alleged advice the plaintiffs paid $7,906.36 to AGAC for the removal of the two underground storage tanks, abandonment of one underground storage tank and the pumping, transportation and disposal of the old "product" which remained in one of the tanks. It is further alleged that had the defendants disclosed the facts alleged to the plaintiffs, then the plaintiffs would have reduced their offer of purchase in order to compensate them for the cost of properly abandoning the tanks or they would have required that the defendants properly abandon the tanks prior to the closing date.
Paragraph eleven of the amended complaint and the remaining paragraphs of the first count go on to allege the following: The defendants' failure to disclose the presence of the three underground unused storage tanks, it is maintained, "fraudulently CT Page 5549 concealed from the plaintiff the existence of a cause of action against the defendant and therefore the cause of action shall be deemed to accrue against the defendant at the time plaintiff first discovered the existence of the cause of action, pursuant to Connecticut General Statutes Section 52-595."
By way of special defense to the first count the defendants plead three separate statutes of limitations. The first statute of limitations is Connecticut General Statutes § 52-581 which provides:
 "(a) No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues.
 (b) This section shall not apply to causes of action grounded by article 2 of title 42a."
The next statute of limitation set out by way of special defense is Connecticut General statutes § 52-577 which provides:
 "No action founded upon a tort shall be brought but within three years from the date of the action or omission complained of."
The last statute of limitations pleaded is in Connecticut General Statutes § 52-584 which provides:
 "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except CT Page 5550 that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed.
In reply the plaintiffs deny the special defenses.
In this action the plaintiffs claims fraud based upon misrepresentation and non-disclosure in the sale of real estate citing Miller v. Appleby, 183 Conn. 51 (1981). Arguing that where facts represented are not open to discovery by inspection, the plaintiffs contend that the applicable law now provides that although a seller of real property may not have a duty to speak that a seller, once he does speak, he must then make a full and fair disclosure as to the matters about which he does assume to speak citing Franchey v. Hannes, 152 Conn. 372 (1965). Such a disclosure, they continue, includes avoiding a deliberate nondisclosure so that when a seller of real property fails to disclose "the whole truth" on a subject on which he has chosen to speak and such conduct is intentional and induces the buyer to purchase the property then that conduct "is equivalent to a false representation."
In this case the plaintiffs claim that the defendant represented to them, prior to the May 1986 sale of the property to them, "that there were two new gasoline tanks which served the two gas pumps [in front of the store on the property involved]" but that "no mention was made of the facts that the old tanks were still in the ground or that they were not properly abandoned." Stating that "the defendant Thomas Dowling admitted at trial that he was aware of the three abandoned fuel storage tanks at all times prior to the sale of the property", the plaintiffs argue that the failure to disclose the three abandoned underground storage tanks, after choosing to speak on the subject, "amounts to a failure to disclose the whole truth about the very subject about which he assumed to speak and that that conduct was intentional and made to induce the plaintiff to buy at the agreed price." The result, they continue, was that they were required to pay AGAC $7906.36 to have two of the abandoned tanks removed and the third tank properly abandoned in the ground.
Further, the plaintiffs reject the defendants' claim that this action is barred by any of the statutes of limitations, General Statutes §§ 52-281 (3 years), 52-577 (3 years) and § 52-584 (2 years) pleaded as special defenses. They say that CT Page 5551 this is so because the defendants fraudulently concealed from them the facts that "support this cause of action" and, therefore, the applicable statute of limitations is General Statutes § 52-595. That statute which is entitled "Fraudulent concealment of cause of action" provides:
 "If any person liable to an action by another fraudulently conceals from him the existence of such cause of action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."
In arguing that § 52-595 is not applicable the defendants put forth their view of the law and the credible evidence. They say that Michele Armellino received notice of the presence of the claimed non-disclosed tanks on the property on at least three occasions after the closing but that all three occasions were prior to the time in 1991 that the plaintiffs claimed that they first learned of the existence of the tanks involved. The defendants also refer to the evidence that Michele Armellino, prior to the sale, viewed and or inspected the property more than once and that he had also hired "an inspection company to inspect the property for him" and and that in the sales agreement for the property, signed by all the parties in March 1986, the plaintiffs as the buyers represented that they had examined the property and were satisfied with its physical condition and that they were to notify the defendants sellers if they were not satisfied with its physical condition. As noted, the defendants claim that Michelle Armellino had notice of the underground tanks on at least three occasions subsequent to the closing. One was a DEP notice brought to his attention about two months after the closing. The next was the DEP notice he received in September 1986. Finally, there was the time when one of the vent pipes from an old underground tank was knocked over and he and the defendant Thomas Dowling discussed the matter at that time.
These claims of the defendants will be developed, as well of those of the defendants, in more detail below. It is sufficient for now to point out that that the defendants maintain that the plaintiffs have not proven their case, as they must, by the more exacting standard of "clear, precise and unequivocal" evidence. See e.g. Fichera v. Mine Hill Corporation, 207 Conn. 204, 215
(1988). We note parenthetically that fraudulent concealment of a CT Page 5552 cause of action under General Statutes § 52-595 ". . . must, like other frauds . . ." be proven by this more exacting standard. Such cases as Miller v. Appleby, 183 Conn. 51, 55
(1981) formulate this standard as "clear and satisfactory evidence. See Miller v. Appleby, supra 51. But, under either theFichera or Appleby articulation of the standard of proof require, it is apparent that a plaintiff's burden of proof cannot be equated with the fair preponderance standard of proof for ordinary civil actions. See Alaimo v. Royer, 188 Conn. 36, 39
(1982).
Appropriately, some background facts may be set out at this point. The property involved was sold on May 26, 1986 by the defendants to the plaintiffs. Situated on Amity Road, it included several buildings. There was, before and after on May 26, 1986, a general store operated by one Levesque. In front of this store and operated by Levesque in conjunction with the store some gasoline fuel pumps. There was also, as one faces the general store and to its right a package liquor store which was operated by the defendant Thomas Dowling before the 1986 sale and which was operated thereafter by the plaintiff Michelle [Michele] Armellino. Some distance behind the general store was a dwelling house occupied by the defendants prior to the 1986 sale and occupied thereafter by the plaintiffs. At the time of the sale to the plaintiffs there were some underground gasoline tanks in the ground on this property. These underground tanks were five in number. There were two 6000 gallon underground gasoline storage tanks ("the new tanks") which had been installed by the defendants shortly before the 1986 sale to the plaintiffs. Michele Armellino admits, that the defendant Thomas Dowling informed him of the presence of the new tanks in the ground before the sale. There were three other gasoline storage underground tanks in the ground on this property at the time of the 1986 sale. It is the plaintiffs position that the defendants never told them of this and that they only learned of their existence "some time after May of 1991" and so this instant action commenced on March 1992 was well within the applicable statute of limitations."
Fraud is not to be presumed, but must be strictly proven by the exacting standard referred to. Puro v. Henry, 188 Conn. 301,308 (1982); Fichera v. Mine Hill Corporation, supra 215, Connellv. Colwell, 214 Conn. 242, 252 (1990), Alaimo v. Royer, supra. The essential elements of an action is fraud have repeatedly been held to be: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue CT Page 5553 by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury Kilduff Adams, Inc., 219 Conn. 314, 329 (1991);Miller v. Appleby, supra 54-44. "The intentional withholding of information for the purpose of inducing action has been regarded . . . as equivalent to a fraudulent misrepresentation"Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401, 407
(1983). Fraud and misrepresentation, of course, is not easily defined because it can be accomplished in many different ways but they present issues of fact. Miller v. Appleby, supra. The trier is the judge of the testimony and the weight to be given to it.Id. Under General Statutes § 52-595 "To establish that the defendants had fraudulently concealed the existence of their (the plaintiffs) cause of action and so had tolled the statute of limitations, the plaintiffs had the burden of proving that the defendants were aware of the facts necessary to establish this cause of action [citations omitted]; and that they had intentionally concealed those facts from the plaintiffs [citations omitted]. The defendants' actions must have been `directed to the very point of obtaining the delay [in filing the action] of which [they] afterward [seek] to take advantage of by pleading the statute'. [citations omitted]. To meet this burden, it [is] not sufficient for the plaintiffs to prove merely that it was more likely than not that the defendants had concealed the cause of action. Instead, the plaintiff had to prove fraudulent concealment by the more exacting standard of `clear, precise and unequivocal' evidence. [citations omitted]." Bound BrookAssociation v. Norwalk, 198 Conn. 660, 665-666 (1986) and cases there cited; see also Connell v. Colwell, 214 Conn. 242, 250,251 (1990); Cutsumpas v. Connecticut Light Power Co.,16 Conn. App. 108, 112-113 (1988).
There were serious questions of credibility presented in this case, particularly as to the evidence of the plaintiff Michele Armellino and the defendant Thomas Dowling. The plaintiffs have not sustained the exacting standard of proof the law imposes upon them in this case. Thomas Dowling prior to the May 1986 told Michele Armellino of the existence of all three empty underground storage tanks on the property. He also told Michelle Armellino that had had all three tanks pumped out. These three tanks had vent pipes that prior to and in May 1986 extended well above the ground near the general store on the property. They were so tall that they extended to the roof of the general store building. These vent pipes were so located since at least since 1977 as a 1977 photograph in evidence fairly discloses. (See Defendant's CT Page 5554 Exhibit 8). Also Michelle Armellino and Thomas Dowling walked the property and went over the property prior to the sale. The vent pipes for these old tanks were about fifteen feet high and were not only obvious but were indicated by Thomas Dowling to Michele Armellino in answer to the latter's inquiry. Parenthetically, Thomas Dowling in like manner prior to the sale, pointed out to Michelle Armellino the vent pipes for the two new 6000 gallon underground tanks which Armellino admits he was aware of prior to the sale, Moreover, the sales agreement signed by the parties in March 1986 provides not only that "the BUYER represents that BUYER has examined said property and is satisfied with the physical condition thereof . . . and neither SELLER nor any representative of the SELLER has made any representation or promise other than those expressly stated herein which BUYER has relied upon in making this Agreement. The BUYER shall have the right to make a final inspection of the premises during a 48 hour period prior to the closing." This same agreement, which is in evidence, also has a "Physical Inspection Contingency" which gives the BUYER'S designers permission to physically inspect the property and further provides that if the BUYER is not satisfied than upon proper written notice to the SELLER the sales Agreement will be null and void and any deposit monies shall be immediately returned to the BUYER." Thus, a duty of inspection was assumed by the BUYER under this contract. As noted Michelle Armellino did inspect the property more than once prior to the May 1986 sale.
After the sale closing in May 1986 and before the "some time after May of 1991" time that the plaintiffs claim discovery of the fact necessary to establish this cause of action "Michelle Armellino was on notice of the three underground storage tanks involved. Approximately two months after the sale Michelle Armellino received a letter[2] from the state DEP indicating that he owned or operated one or more "storage tank facilities" that were required to be properly abandoned or removed by a particular date. He said that he showed this letter to Thomas Dowling on the same day that he received it. Thomas Dowling said that Michelle Armellino told him that he had received this letter. The plaintiffs contend that this is the first they know of the three old underground tanks and that Michelle Armellino did nothing about this notice because Thomas Dowling told him that there was no problem with these tanks. This claim is rejected because Michelle Armellino knew of all these tanks before the sale as Thomas Dowling had not only told him about them but additionally because the vent pipes from these old tanks were open and visible before the sale. CT Page 5555
For about between a year and a year and a half after the May 1986 sale of the property to the plaintiffs, Thomas Dowling continued to help Michelle Armellino in the liquor package store on the property. In September 1986 Michelle Armellino received a notice from the state DEP concerning the life expectancy of the two new 6000 gallon underground storage tanks. He told Thomas Dowling of this. At that time Dowling again told him about the old underground tanks. During the time after the 1986 sale in which Thomas Dowling helped Armellino at the latter's package store someone hit and knocked over one of the vent pipes for one of the old underground tanks and at that time Thomas Dowling suggested to Armellino that the better fix it, repair it.[3]
This apparently was not done by the Armellino. In January 1987, a broken underground pipe line leaked according to another DEP report concerning their inspection at that time and it was repaired. This report also contains the notation "Tanks tested — O.K."
In a very recent case on fraudulent concealment of a cause of action under G.S. § 52-595 our Supreme Court has, in summarizing our case law on this matter and referring to authority referred to earlier in this memorandum said that plaintiffs, "to prove fraudulent concealment [are] required to show: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action. Connell v. Colwell, 214 Conn. 242.[,] 250-51,571 A.2d 116 (1990); Bound Brook Assn. v. Norwalk, [198 Conn. 660, 665-66
(1986)]; Lippitt v. Ashley, 89 Conn. 451, 480, 94 A. 995 (1915)."Bartone v. Robert J. Day Co., 232 Conn. 527, 535 (1995). The plaintiffs have not sustained the exacting burden of proof imposed upon him so as to entitled them to the benefit of the tolling of the statute of limitations afforded by §§ 52-595. This requires the rejection of their claim that the statute of limitations did not begin to run on [their] claim until the plaintiff's discovery of the facts necessary to establish [their] cause of action which [according to the plaintiffs] did not occur until some time after May of 1991[.]"
The conclusion that the plaintiffs have not sustained their burden of proof under § 52-595 requires that we consider the CT Page 5556 special defenses. This action was instituted in March 1992. Given the facts as above set out this action was clearly not brought within the time limitations set out in any of the statutes of limitations pleaded in special defense. As to § 52-577 which has a three year limitation period for a tort and is, this court believed under the issues as framed the applicable limitation statute, it is clear that this action was not brought within that period. As to § 52-584 this court does not deemed it applicable as this action is not concerned with the delict of ". . . physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanitorium. . . ." Finally, even if § 52-281 is deemed applicable, this action was not brought within its limitation period.
In accordance with the foregoing, the issues are found for the defendants and judgment is enter for the defendants.
Arthur H. Healey State Trial Referee