EMILIA P. M. BURLEY *v.* REZIN DAVIS ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

■■■■■■ ■■■■■

■■■■■

■■■■■■■■■■■■■■

Argued February 5—decided March 6, 1946.

*Sidney Vogel,* with whom was *Frank J. Culhane,* for the appellant (plaintiff).

*Philo C. Calhoun,* for the appellees (defendants).

JENNINGS, J. The facts here recited were not in dispute. James L. Burley was an architect and senior member of a firm consisting of himself, Rezin Davis and Svend B. Sommer. The written articles of partnership as amended provided that, on the death of a partner, the surviving partners would carry on the business of the partnership for a period of six months and would pay to the widow of the deceased partner the proportionate share of the cash receipts above cash disbursements of the business which the partner, if alive, would have been entitled to receive. Burley died April 19, 1942.

The firm had been working on plans for an addition to the Norwalk Hospital for several years. The hospital was seeking a contribution from the federal government under the Lanham Act and the ensuing com-

plications delayed the start of the work. Ground was not broken until March 18, 1943, but the grant was approved by the president of the United States about October 9, 1942. On that date, at a meeting of the building committee of the hospital, the architects submitted a memorandum requesting a payment for work on the preliminary drawings in accordance with the terms of their contract with the hospital. The contract was in draft form at that time but was not executed by the firm until November 24, 1942, and by the hospital until December 1, 1942, and was not approved by the federal works agency until December 11, 1942. On October 19, 1942, just six months after Burley's death, the architects sent a bill to the hospital for a payment under their contract and on October 30, 1942, a payment of $3876 was made. Both of the surviving partners were in service in the army by October 1, 1942, but the completion of the plans and supervision of the work as it progressed was carried on by their office.

The situation at the close of the trial was accurately and concisely summarized by the trial court, in the charge directing a verdict, as follows: ". . . this action, as the pleadings stand, covers monies alleged to be due Mrs. Burley, either individually or as executrix under her husband's will, for the six months period immediately succeeding his death, and also an allegation that the defendants fraudulently conspired to delay making demand for payments due under the contract with the Norwalk Hospital Association so that payments actually received were extended beyond the six months period following Mr. Burley's death; and also claims that there were certain other monies, including monies loaned and advanced by Mr. Burley to the defendants which were due. There has been no evidence introduced by plaintiff, or introduced

in the case, to warrant the submission of the main issues to the jury. There is no evidence at all of any indebtedness due to Mrs. Burley. There is no evidence at all of any fraud upon the part of the defendants in endeavoring to delay the payments from the Norwalk Hospital Association so that the payments would be made after the six months period immediately following Mr. Burley's death." The jury were then directed to bring in a verdict for the defendants on the main issues and for the plaintiff for the comparatively small amount of a note signed by one of the defendants and which he agreed to pay. The plaintiff has appealed from the denial of her motion to set aside this verdict and from the judgment.

It is true that directed verdicts are justified only in exceptional cases; *Heringer* v. *Underwood Typewriter Co.,* 103 Conn. 675, 678, 131 Atl. 322; and the evidence must be considered in that aspect most favorable to the plaintiff; *Lesser* v. *Bridgeport-City Trust Co.,* 124 Conn. 59, 61, 198 Atl. 252; but examination of the voluminous evidence fully justifies the conclusion reached by the trial court. *Smeriglio* v. *Connecticut Savings Bank,* 129 Conn. 461, 463, 29 Atl. (2d) 443. The principal issue stressed by the plaintiff on the trial was fraud. ". . . fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise and unequivocal. . . ." *Basak* v. *Damutz,* 105 Conn. 378, 382, 135 Atl. 453. The bare facts that the bill was submitted and payment made so close to the expiration of the six-month period were not, in themselves, sufficient to take the case to the jury, even without considering the explanation of the defendants. The real question in the case is whether rulings made on the trial illegally deprived the plaintiff of an opportunity to present evidence which would have provided a basis for recovery by her.

At the opening of the trial, the plaintiff offered an amendment to the complaint and later, during the trial, claimed the right to file it to conform to the proof. A comparison of the allegations of the amendment with those of the complaint shows that the amendment sought to add another cause of action. The plaintiff, in her brief, claims that this is not so, but all that appears in the finding is the recital of the offer of the amendment and the refusal of permission to file. The principal cause of action in the complaint was based on the allegation that the defendants fraudulently conspired to delay making seasonable demand for payment under the contract. The amendment alleged, in effect, that the defendants were guilty of fraud in procuring an alteration in the original contract executed several years previously. The original contract was more favorable in its terms to the plaintiff and Burley. The writ was dated May 27, 1943, and the trial began February 23, 1944. The liberal policy in allowing amendments is noted and many of the cases are cited in *Evans* v. *Byrolly Transportation Co.*, 124 Conn. 10, 12, 197 Atl. 758, but it cannot be held, as a matter of law, that the trial court abused its discretion in denying permission to amend. As the defendants argued, if the plaintiff wanted to bring up this issue, she should have done so long before. See *Crowell* v. *Middletown Savings Bank*, 122 Conn. 362, 368, 189 Atl. 172.

A finding stating the claims of proof of the parties appears in the record and the plaintiff seeks corrections in it on the ground that they would affect the granting of the motion for a directed verdict. They are irrelevant to that end. *Baker* v. *Paradiso*, 117 Conn. 539, 543, 169 Atl. 272; Conn. App. Proc., p. 126, § 94. In passing on the propriety of the motion,

this court is concerned solely with the evidence. *Horvath* v. *Tontini*, 126 Conn. 462, 465, 11 Atl. (2d) 846.

A witness offered by the plaintiff testified that payments were made to the defendants during a certain period but that they were not made under the contract under investigation. He was then asked, "Yes, and in the aggregate what would they run, approximately?" As has been stated, the gravamen of the complaint was fraud on the part of the defendants in delaying the receipt of a portion of the architect's fee. Neither prior to nor at the time of the ruling had the plaintiff made any claim that sums had been received within the period in question which had not been accounted for to her. The record fails to show how the evidence excluded was relevant upon the issue of fraud or how its exclusion was injurious to the plaintiff. The ruling did not constitute harmful error.

The bookkeeper of the defendants was present in court and their attorney stated that he would call her. After the plaintiff rested the attorney for the defendants offered two exhibits and rested. Thereafter, the bookkeeper was excused by the attorney for the defendants from further attendance. During a noon recess, plaintiff's attorney asked the trial judge to order her attendance at the afternoon session. He admitted that she was not under subpoena and the judge refused to make such an order. No formal motion was made in the matter.

The excuse now offered by the defendants' attorney is that he saw nothing in the plaintiff's case to rebut and since both sides had rested felt justified in excusing the witness. Unfortunately, it turned out that the plaintiff wished to call her on rebuttal. In view of the earlier statement of the defendants' attorney that he would call her, it would have been better prac-

tice for him to have inquired of the plaintiff's attorney whether he wanted the witness before excusing her. In the absence of any formal motion and of any indication of the evidence sought to be elicited on rebuttal, it cannot be held that the ruling was erroneous. The power of a court to issue a capias directing the arrest of a witness is ordinarily conditioned on the issuance of a subpoena. General Statutes, § 5580.

There is no error.

In this opinion the other judges concurred.