[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE #111
This case was brought to the housing court as a summary process action wherein the plaintiff, American Bank, sought to evict the defendant, Frank Mango, from leased premises for nonpayment of rent. Before the court is the plaintiff's motion to strike the defendant's special defenses and counterclaim. A chronological summary of the factual and procedural history of this case follows. CT Page 367
On January 5, 1995, the plaintiff commenced a summary process action against the defendant for the nonpayment of rent pursuant to a use and occupancy agreement. The defendant represented himself pro-se and filed an answer and special defenses on January 18, 1995. Shortly thereafter, the defendant obtained counsel who filed a motion to amend and a motion to transfer this case to the Superior Court. The court, Jones, J., ordered the defendant to file a brief and a proposed amended counterclaim with any special defenses to be asserted so that the court could evaluate the merits of the motion. On March 1, 1995, the court, Jones, J., granted the defendant's motions to transfer the matter out of the housing court to the regular civil docket. As a result, both the plaintiff's summary process complaint and the defendant's special defenses and counterclaims are pending in this court.
The plaintiff's summary process complaint contains the following allegations. In June of 1994, the plaintiff, as lessor, and the defendant, as lessee, entered into a written use and occupancy agreement for a single family home located in Oakville, Connecticut. The complaint further alleges that the defendant failed to make the required rental payments for December 1994 and January, 1995. As a result of this nonpayment of rent, the plaintiff seeks a judgment of immediate possession.
The defendant's amended answer and counterclaim contains five affirmative defenses and a seven count counterclaim.
At different times in these proceedings, both parties have introduced copies of two agreements under which the defendant allegedly occupied the property. The first agreement, entitled "Use and Occupancy Agreement", provides for a two year lease of the property at the rate of $1,394.58 per month. The second agreement, entitled "Purchase Agreement", incorporates the use and occupancy agreement by reference and provides for the purchase of the property by the defendant at the end of the lease term. This agreement also provides that default under either agreement shall constitute a default of both agreements and requires the defendant to post a non-refundable twenty thousand dollar deposit.
On July 31, 1995, the plaintiff filed the operative motion to strike wherein he contests the legal sufficiency of each of the defendant's affirmative defenses and counterclaims along with a supporting memorandum of law. In response, the defendant has filed a timely objection and supporting memorandum on August 11, 1995. On CT Page 368 September 21, 1995, the plaintiff filed a supplemental supporting memorandum in response to the defendant's objection. Oral argument was heard at short calendar on September 25, 1995.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Citations omitted; internal quotation marks omitted.) Novametrix Medical Systems, Inc.v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). When ruling on a motion to strike, a court "must construe the complaint in the manner most favorable to the pleader." Blancato v. FeldsparCorporation, 203 Conn. 34, 36, 522 A.2d 1235 (1987). "The motion to strike admits all facts well pleaded; it does not admit legal conclusions or truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108, 196 A.2d 91
(1985). The facts giving rise to the claim must be taken from the complaint because the motion to strike cannot be opposed by facts outside the attacked pleading. Kilbride v. Dushkin Publishing Group,Inc., 186 Conn. 718, 719, 443 A.2d 922 (1982). "A motion to strike is the proper method of challenging the legal sufficiency of a special defense." Krasnow v. Christensen, 40 Conn. Sup. 287, 288,492 A.2d 850 (1985, Burns, J.). A motion to strike may also be employed to challenge the legal sufficiency of a counterclaim. EmleeEquipment Leasing Corporation v. Waterbury Transmission, Inc.,41 Conn. Sup. 575, 578, 595 A.2d 951 (1991, Blue, J)
The defendant raises five special defenses to this action and the defendant has moved to strike each as legally insufficient. The parties' arguments are essentially the same as to each defense. The plaintiff characterizes the present action as strictly a suit for nonpayment of rent and challenges the validity of each special defense. As a result, the plaintiff contends that none of these defenses is a valid defense to an action for possession based upon nonpayment of rent. In opposition, the defendant asserts that his special defenses are properly pleaded because he occupied the premises pursuant to a purchase and sale agreement.
Special Defense One
Special defense one alleges that "Mr. Mango occupies the house as one who would purchase the premises in fee simple at a later date" and that, therefore, he "may not be evicted by summary process."
General Statutes § 47a-2 enumerates the matters exempt from the CT Page 369 application of summary process and provides in relevant part that:
 (a) Unless created to avoid the application of this chapter . . . the following arrangements are not governed by this chapter . . . : (2) occupancy under a contract of sale of a dwelling unit or the property of which such unit is a part, if the occupant is the purchaser or a person who succeeds to his interest. . . .
Construing the allegations in the light most favorable to the defendant, the court finds that special defense one is legally sufficient. The defendant alleges that he occupies the premises "as one who would purchase" and Section 47a-2 specifically exempts this type of occupancy from summary process. Accordingly, the plaintiff's motion to strike the first special defense is denied.
Special Defense Two
Special defense two contains the following allegations:
 Mr. Mango signed the "Use and Occupancy Agreement" attached hereto as exhibit B as well as the "Purchase and Sale Agreement" attached hereto as Exhibit A, which constitute one agreement, under duress.
Although the defendant specifically refers to duress, he has failed to raise the necessary factual predicate to sustain a valid special defense. "In order to plead duress as a special defense, the defendant must plead facts which show that the plaintiff has no cause of action." Connecticut Nat'l Bank v. Ealahan Electric Co., Superior Court, judicial district of New London at New London, Docket No. 519422 (November 6, 1992, Hendel, J.) "Mere conclusions of law, absent sufficient factual allegations to support them are subject to a motion to strike." Cavallo v. Derby Savings Bank,188 Conn. 281, 285, 449 A.2d 986 (1982). Therefore, the plaintiff's motion to strike the second special defends is granted.[1]
Special Defense Three
Special defense three contains the following allegations:
 The plaintiff knew of material facts which at the time the "Use and Occupancy Agreement" and "Purchase and Sale Agreement" were executed and unknown to Mr. Mango. It used this knowledge to fraudulently induce Mr. Mango to enter CT Page 370 into the "Purchase and Sale Agreement" which incorporates a "Use and occupancy Agreement" by reference.
Here, the defendant has not made sufficient allegations to sustain a special defense based on fraud. There are no allegations that representations made by the plaintiff were false, untrue, and known to be untrue by the plaintiff when they were made in order to induce the defendant to act. Therefore, the plaintiff's motion to strike the defendant's third special defense is granted[2].
Special Defense Four
Special defense four contests the validity of both the purchase and sale and use and occupancy agreements and asserts that the agreements are void because they violate "state and federal Truth in Lending Laws and other laws."
The resolution of these issues requires an examination of the scope of summary process and the authority of the Superior Court to hear and decide complex issues and equitable defenses in summary process.
Although earlier cases held that summary process is restricted to certain limited issues; See Atlantic Refining Co. v. O'Keefe,131 Conn. 528, 531, 41 A.2d 109 (1945); it is now clear that "equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." Fellows v. Martin,217 Conn. 57, 62, 584 A.2d 458 (1991).
General Statutes 47a-70, entitled "Housing Matters", governs the transfer of housing matters to the regular docket and provides in relevant part that "the judge . . . may transfer such matter to the regular docket . . . if he determines that such matter is not a housing matter or that such docket is more suitable for the disposition of the case. Any case so entered or transferred to either docket shall be proceeded upon as are other cases of like nature standing on such docket." Our Appellate Court has said "the housing judge has the discretion . . . to transfer to the regular civil docket . . . a summary process action which, because of its complexity, would formerly have been outside the ambit of summary process." Southland Corp. v. Vernon, 1 Conn. App. 439, 449,473 A.2d 318 (1984).
A defendant in a summary process action may employ equitable defenses and counterclaims which implicate the right to possession CT Page 371 and that the Superior Court has the authority to adjudicate such claims. Fellows v Martin supra. The court finds special defense four, which challenges the validity of both the use and occupancy and purchase and sale agreements, is legally sufficient and therefore plaintiff's motion to strike the fourth special defense should is denied.
Special Defense Five
Special defense five alleges that "[t]he plaintiff Bank violated its covenant of good faith and fair dealing" in executing the agreements. The Defendant has failed to allege the necessary facts to sustain this attach as a valid special defense. The Courts discussion as to the second special defense is applicable here and will not be repeated. Suffice is to say that mere conclusions of law without supporting factual assertions will not survive a motion to strike and therefore the Plaintiffs motion to strike the fifth special defense is granted.
Counterclaim
Count One — Violation of Truth In Lending Act and Consumer Credit Protection Act
Count one of the defendant's counterclaim alleges that the plaintiff failed to make certain required disclosures in a closed-end credit transaction pursuant to the Connecticut Truth in Lending Act, General Statutes § 36-393 et seq., and the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.
The plaintiff moves to strike this count as legally insufficient, relying upon the exemption to the Federal Consumer Credit Protection Act created by 12 C.F.R. § 226.1 et. seq., commonly referred to as Regulation Z, and its Connecticut corollary, General Statutes § 36-393(b). The plaintiff contends that "[n]owhere in the text of the agreement is reference made to the giving of a security interest in real property of the Defendant in exchange for this promissory note." The plaintiff counters that count one is legally sufficient.
12 C.F.R. § 226.3 creates exceptions to the provisions of the Consumer Credit Protection Act and provides in relevant part:
 This regulation does not apply to the following: . . . (b) . . . An extension of credit not secured by real CT Page 372 property . . . in which the amount financed exceeds $25,000 . . .
Exemptions to Connecticut's Truth in Lending Act are coextensive with exemptions to the Consumer Credit Protection Act. General Statutes § 36-393b(a) provides in relevant part that "[a]ny transaction which is exempt form the provisions of the Consumer Credit Protection Act, . . . is exempt from the provisions of this chapter."
Count one of the counterclaim alleges that the plaintiff failed to make the following disclosures in connection with the transaction:
 a. the fact that Mr. Mango had a right to rescind pursuant to 15 U.S.C. § 1635 and Title 12 Code of Federal Regulations Section 221.23 et seq. and Conn. Gen. Stats sec. 393 et seq.; . . . h. the finance charge as an "annual percentage rate" required by 15 U.S.C. § 1638 (a)(4); i. a written statement of the sum of the total amount financed and the finance charge, which must be termed "total of payments" pursuant to 15 U.S.C. § 1638 (a)(5), j. the number amount and due date or period of payments scheduled to repay the total of payments pursuant to 15 U.S.C. (a) (6; k. failed to disclose the total sale price which is the total of the cash price of the property, additional charges and the finance charge pursuant to 15 U.S.C. § 1638
(a)(7) l. to disclose that the bank would require a security interest in the property as required by 15 U.S.C. § 1639 (a) (9). . . .
The Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq., imposes disclosure requirements upon lenders in consumer credit transactions. For example, 15 U.S.C. § 1635(a) provides in relevant part:
Disclosure of obligor's right to rescind: . . . The
 creditor shall clearly and conspicuously disclose, in accordance with the regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. . . .
CT Page 373
Similar disclosure requirements are mandated by 15 U.S.C. § 1638
which provides in pertinent part:
 (a) Required disclosures by creditor. For each consumer credit transaction other than under an open end plan, the creditor shall disclose each of the following items, to the extent applicable:
 (4) The finance charge expressed as an `annual percentage rate' . . . (5) The sum of the amount financed and the finance charge, which shall be termed `total of payments'. (6) The number, amount, and due dates or period of payments scheduled to repay the total of payments. (7) In a sale of property or services in which the seller is the creditor required to disclose pursuant to . . . the `total sale price', using that term, which shall be the total of the cash price of the property or services, additional charges, and the finance charge. . . . (9) Where the credit is secured, a statement that a security interest has been taken . . .
The act also authorizes a private suit against a creditor who fails to comply with its disclosure provisions. 15 U.S.C. § 1640 entitled "Individual or class action for damages; amount of award; factors determining amount of award", provides in relevant part:
 Except as otherwise provided in this section, any creditor who fails to comply with the requirement imposed under this chapter . . . with respect to any person is liable to such person in an amount equal to the sum of — (1) any actual damage sustained by such person as a result of the failure . . . (2)(A)(i) in the case of any individual action twice the amount of any finance charge . . .
Against this legal and factual background, The Court finds that these allegations are legally sufficient. Each of these allegations, if proven, would constitute a violation of the Consumer Credit Protection Act. Moreover, the plaintiff's argument relies exclusively upon Regulation Z and its exemption for loans not CT Page 374 secured by a real property mortgage. It is axiomatic that "[a] motion to strike which imparts facts outside the pleadings is a `speaking' motion which will not be granted. Liljedahl Bros. Inc. v.Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990); Doe v. Marselle,38 Conn. App. 360, 364. ___ A.2d ___ (1995). In the present case, the defendant's counterclaim alleges that the plaintiff failed to disclose the existence a mortgage on the property. For the purposes of this motion to strike, this allegation must be taken as true. The plaintiff's argument improperly asks the court to look beyond the four corners of the pleadings and to adjudicate the validity of the counterclaim. For the reason above stated the court will deny the motion to strike count one of the counterclaim.
Count Two — Breach of Covenant of Good Faith and Fair Dealing
Count two of the defendant's counterclaim alleges in relevant part that:
 11. The Bank was aware of Mr. Mango's deep and abiding personal attachment to the property. 12. The Bank knew that Mr. Mango, because of his familial connection to the land, would agree to nay terms and go to any lengths to keep the house and the [sic] he would pay a premium for the home and that no other buyer could be desperate to purchase this land. 13. The Bank threatened Mr. Mango with ejectment and gave Mr. Mango seven days to come up with $20,000 to pay the bank if he and his family wished to remain in the home. . . . 16. With superior knowledge, resources and unequal bargaining power, the Bank knew that Mr. Mango would comply with whatever conditions or terms it imposed without question. . . . 18. The Bank knowingly imposed unreasonable terms on Mr. Mango . . . 20. The Bank violated its covenant of good faith and fair dealing . . .
The plaintiff argues that "[t]his counterclaim is legally insufficient in that it fails to state a claim upon which relief can be granted. . . . The breach of the covenant of good faith and fair dealing is more properly pled as an equitable defense. It does not give rise to a separate cause of action." In opposition, the defendant contends that "[t]he facts allege a breach of the covenant of good faith and fair dealing in entering into the contract for the CT Page 375 sale of the premises." Neither party cites any authority in support of their respective positions.
"[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement." Warnerv. Konover, 210 Conn. 150, 154, 553 A.2d 1138 (1989); see Restatement (Second), Contracts, Sec. 205. "The concept of good faith and fair dealing is [e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." (Internal quotation marks omitted.) Verrastro v. Middlesex Ins. Co., 207 Conn. 179, 190,540 A.2d 693 (1988). "The implied good faith covenant relates to performance and enforcement of a contract." Cooper v. Burby, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 38 75 63 (April 29, 1992, Satter, STR)
"Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . ." Neiditz v.Housing Authority, 43 Conn. Sup. 283, 294, 654 A.2d 812 (Holzberg, J., 1994), aff'd 231 Conn. 600 (1995). However, "[t]he covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and what is in dispute is a party's discretionary application or interpretation of a contract term." Neiditz v. Housing Authority, supra, 43 Conn. Sup. 294. Where the dispute does not concern a discretionary decision by the plaintiffs, but rather the existence of the contract itself, the issue is whether the agreement was induced by fraud, not whether a party exercised bad faith in discharging their contractual obligations. Id. Where the issue is whether the contract was induced by fraud, and therefore unenforceable, the covenant of good faith and fair dealing is not implicated. Id.
In the this case, the defendant, in count two of the counterclaim, alleges that the plaintiff breached its duty of good faith and fair dealing in the execution of the agreement that is the subject matter of the present dispute. The defendant does not allege that the plaintiff breached its duty of good faith and fair dealing in its performance or enforcement of the contract; instead, these allegations of relate to the pre-agreement stage of its relationship with the defendant. Since the defendant's allegations are limited to the period preceding the formation of the agreement, the covenant of good faith and fair dealing is not implicated. and therefore the Court will strike count two of the defendant's counterclaim. CT Page 376
Count Three — Illegal Contract
The Court's analysis regarding count 1 leads to the same result with regard to count three. The motion to strike count three of the counterclaim is denied.
Count Four — Fraud
Count Four contains the following allegations:
 1. Paragraphs 1-20 of Count Two are hereby made paragraphs 1 through 16 of this count as if fully set forth therein. 21. The Bank knew the contract was in contravention of Truth in Lending laws, violated Unfair Trade Practices Acts, breached the implied covenant of good faith and fair dealing, arose under circumstances of unequal bargaining power and was signed out of duress. 22. Mr. Mango was unaware of the Bank's violations of the law, of acts or omissions in it conduct and of its intentions. 23. The Bank committed fraud in its conduct in connection with the contract.
The plaintiff moves to strike this count, alleging that "the Defendant has failed to set forth a prima facie case of fraud because he has not alleged sufficient facts to support such an allegation." In opposition, the defendant counters that fraud has been properly pleaded.
"The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 438 A.2d 811 (1981). Fraud is not to be presumed but must be proven by clear and satisfactory evidence. See Bruneau v. W. W. Transportation Co.,138 Conn. 179, 182, 82 A.2d 923 (1951); Kulukundis v. Dean StoresHolding Co., 132 Conn. 685, 689, 47 A.2d 183 (1946); Burley v.Davis, 132 Conn. 631, 634, 46 A.2d 417 (1946); Basak v. Damutz,105 Conn. 378, 382, 135 A. 453 (1926). "Fraud is a fact to be specially pleaded." American Surety Company v. Pacific Surety Company,81 Conn. 252, 256, 70 A. 584 (1908).
The defendant has failed to make the proper allegations to CT Page 377 sustain a claim for fraud. The plaintiff's motion to strike count four of the counterclaim is granted.
Count Five — Duress
Count Five of the defendant's counterclaim contains the following allegations:
1. Paragraphs 1-20 of Count 2 are hereby made paragraphs
1 through 20 of this count as if fully set forth herein.
 21. Said contract was executed under duress and are void requiring the return of all moneys paid under the contracts.
The plaintiff argues that the defendant has "failed to set forth a pattern of conduct on the part of the plaintiff that would constitute duress." The defendant, in his objection, counters that "[t]he facts, on their face, recited above and set forth in the complaint demonstrate duress and unequal bargaining power."
"Common law or classical duress was narrowly construed and required acts that were sufficient to overcome the mind and will of a person of ordinary firmness. However, there has been a gradual relaxation of these rules and under the modern doctrine of duress, the pressure applied does not have to be such as to overcome the will . . . of a [person] of ordinary firmness but is sufficient if it in fact overcomes the will of the person against whom it is applied. In other words, any wrongful act or threat which actually compels the victim to act against his will constitutes duress. . . . Under the modern rule we look to the effect of the wrongful acts on a particular person rather than to the hypothetical effect on a person of ordinary firmness." (Citations omitted; internal quotation marks omitted.) Id. "The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it `impossible for him to exercise how own free will.'" Zebedeo v. Martin E. Segal Co., Inc., 582 F. Sup. 1394,1417 (D.Conn. 1984).
The defendant as was true in count four has failed to assert the necessary allegations to sustain a claim based on duress. Even when construed in the light most favorable to the defendant, Count Five fails to allege conduct on the part of the plaintiff which compelled the defendant to enter into the agreements against his CT Page 378 free will. The court will therefore grant the motion to strike count five of the counterclaim.
Count 6 — CUTPA
Count 6 of the defendant's counterclaim contains the following allegations:
 1. Paragraphs 1-20 of Count 2 are hereby made paragraphs 1 through 20 of this count as if fully set forth herein. 21. The foregoing conduct of the bank constitute unfair or deceptive acts within the meaning of CUTPA, Conn. Gen. Stats. secs. 42-100a et seq. and 28 U.S.C. § 1338(b).
The plaintiff contends that "the [d]efendant has failed to allege the required elements in order to properly raise a violation of CUTPA." The defendant counters that he has properly pleaded a CUTPA violation.
The Connecticut Supreme Court has held that the required elements to a CUTPA violation are:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
 (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254,550 A.2d 1061 (1988).
The Court agrees with the plaintiffs claim that the defendants have failed to allege the required elements in order to properly raise a violation of CUTPA. The Court will strike count six of the counterclaim.
Count Seven — General Statutes § 47a-2
Count Seven, in relevant part, contains the following CT Page 379 allegations:
 4. Because occupancy under a contract of sale of a dwelling unit is not governed by landlord and tenant laws, the defendant Mr. Frank Mango seeks the refund of all monies referred to as "rent" and continued possession of the premises.
The remainder of Count Seven fails to allege any statutory authority whatsoever in support of this proposition.
The plaintiff argues that this count is legally insufficient because § 47a-2 does not give rise to a cause of action. The defendant does not address this issue in its objection.
General Statutes 47a-2 provides in relevant part:
 (a) Unless created to avoid the application of this chapter . . . the following arrangements are not governed by this chapter . . . : (1) Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling, religious service or any similar service; (2) occupancy under a contract of sale of a dwelling unit or the property of which such unit is a part, if the occupant is the purchaser or a person who succeeds to his interest; (3) occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of such organization; (4) transient occupancy in a hotel or motel or similar lodging; and (5) occupancy by an owner of a condominium unit.
It is clear that § 47a-2 does not give rise to a cause of action and therefore this count is legally insufficient. The plaintiffs motion to strike count seven of the counterclaim is granted.
PELLEGRINO, J.